STARR *against* PEASE and others.

| | |
|---|---|
| 8 | 541 |
| 67 | 495 |
| 8 | 541 |
| 69 | 74 |
| 69 | 584 |
| 69 | 603 |
| 8 | 541 |
| 73 | 285 |

The right of the husband in the land of his wife, being an estate during coverture, is terminated, by a divorce *a vinculo matrimonii.*

Where the General Assembly of this state, in 1827, on the application of the wife, alleging criminal intimacies of her husband with another woman not amounting to adultery, found the fact alleged, and passed an act absolving the petitioner from all obligations by virtue of the marriage; previous to which a creditor of the husband had taken by execution his right in the land of the wife; it was held, 1. that such act of divorce was not prohibited, by the constitution of the *United States,* as a law impairing the obligation of contracts; 2. that it was not repugnant to the constitution of this state, as an assumption of judicial power, by the legislature; 3. that it was not void as a law having a retrospective operation; 4. that the rights of persons not parties to the petition, dependent on the coverture, might be affected by the divorce; and consequently, that such creditor's right in the land, was thereby terminated.

The legislative power in this state, since the constitution of 1818, is the same as it was before, except so far as it is limited by that constitution.

In ejectment, there can be no recovery for rents and profits accruing subsequently to the commencement of the action.

THIS was an action of ejectment; to which the general issue was pleaded.

The case was as follows. In the year 1799, the plaintiff became the wife of *John L. Lewis.* In 1820, *George Starr,* the father of the plaintiff, died, seised of the demanded premises; and immediately thereafter, the fee thereof was vested in the plaintiff, as his heir, and the right of possession in *Lewis,* her husband. In 1826, the premises were taken by execution, in favour of *Pease,* one of the defendants, against *Lewis;* and his right therein became vested in *Pease,* who, with the other defendants, on the 14th of *May* 1828, ousted the plaintiff, and took possession. *Lewis* never had any child by this marriage, and is still living.

In *May* 1827, the plaintiff preferred her petition to the General Assembly, for a divorce, which was granted; and the following act or decree was passed: " Upon the petition of *Martha M. Lewis,* representing to this Assembly, that she was lawfully married to *John L. Lewis,* on the 23rd day of *September,* 1799; and that, on or about the 15th day of *January,* 1826, the said *John L. Lewis* indulged such criminal intimacies with one *Nancy B. Jones* as amounted to adultery, as nearly could be, without the actual perpetration of the crime; and praying

for a divorce ; as per petition on file : And the said allegation, after hearing of the petitioner and said *John L. Lewis*, with their witnesses and counsel, being found true :

"*Resolved by this Assembly,* that the said *Martha L. Lewis* be, and she hereby is, divorced from her said husband, the said *John L. Lewis ;* and is hereby released and absolved from all obligations, by virtue of said marriage."

The case was reserved for the advice of this Court, upon the question, whether the plaintiff was entitled to a recovery ; and if so, to what period the rents and profits should be computed, in the assessment of damages.

*Sherman* and *Barnes*, for the plaintiff, contended, 1. That the act of divorce, in this case, is a valid act. It is a special law of the legislature, in which the sovereign power of the state resides, without restriction, except by the constitutions of the *United States* and of this state. First, this is not a law impairing the obligation of a contract, within the meaning of the 10th section of the 1st article of the constitution of the *United States ;* but it is a law dissolving the marriage, for the relief of one of the parties, because its obligations have been violated by the other ; or, in other words, it is a law punishing a breach of the contract, by imposing a forfeiture of the rights acquired under it. 4 *Wheat.* 629. 696. 2 *Kent's Comm.* 89. 99. Secondly, the act in question is not opposed to the constitution of this state. It will be conceded, that it is competent to the sovereign power of a state, in the absence of any constitutional restriction, to grant divorces. The only restriction in the constitution of *Connecticut*, arises from the division of the powers of government. The question then is, whether the interposition of the legislature, in this case, was a *judicial* act. The exercise of judicial power consists in the administration of justice according to existing laws. Legislative power is exercised in making law. Here was not a case of judging according to existing laws, but the making of a law for a particular case. The presence of parties and the array of conflicting claims, do not change the nature of the power.

A law authorizing divorces, in certain cases, by decree of a judicial tribunal, was enacted in *October*, 1667, and has been in force, with little variation, from that time to the present ; and during that long period, before and since the adoption of our state constitution, divorces have been granted by the General

Assembly, at almost every session, without a question as to their validity. 1 *Swift's Dig.* 23. Public opinion has given them universally its sanction. *Contemporanea expositio est fortissima in lege.*

This question has never been agitated before. In a new case, it is well to look at the consequences of a decision one way or the other. If the ground taken by the defendants is ⬤able, all the divorces granted since the adoption of the con-⬤ution of the *United States,* are *null and void.* If the parties have married again, they have been guilty of adultery; the issue of such subsequent marriages, are bastards; and the estates which they have inherited, are not their own. Do the sufferers look to the sovereign power of the state for relief? Its hands are tied. It can no more validate titles, than annul marriages. The evils are as irremediable as they are intolerable. )

2. That the act of divorce being valid, the estate of *Lewis,* and of course, that of the defendants, was thereby terminated. What estate had *Lewis;* and what estate did the defendants take? An estate during coverture. The coverture is at an end: the estate, of course, ends with it. *Legg* v. *Legg,* 8 *Mass. Rep.* 99. *Barber* v. *Root,* 10 *Mass. Rep.* 260.

3. That damages for mesne profits may be recovered, in the action of ejectment, to the time of rendering judgment. For this there are two substantial reasons: first, to avoid a multiplicity of suits; and secondly, because ejectment here is intended as a direct and complete remedy. 1 *Swift's Dig.* 509. 510. 3 *Bla. Comm.* 205. and note by *Chitty, ibid. Adams* on *Eject.* 328.

*N. Smith* and *Storrs,* for the defendant, contended, 1. That the divorce in question was void, under the constitution of the *United States,* (*art.* 1. *s.* 19.) as impairing the obligation of the contract of marriage.

First, marriage is a civil contract. 2 *Kent's Comm.* 75. And it cannot be distinguished from any other to except it out of the prohibitory clause referred to, on any clear, intelligible or sensible ground. It comes within the narrowest sense of the term, as used in that clause, which has ever been claimed, *viz.* " a contract *respecting property,* under which some individual can claim a right to something beneficial to himself;" (4 *Wheat.* 628.) for although this is not its principal object, the rights of

*Middlesex,* property are very materially affected by it. A grant is a contract within the meaning of the constitution. *Fletcher* v. *Peck,* 6 *Cranch,* 136, 7. *Dartmouth College* v. *Woodward,* 4 *Wheat.* 518. *New-Jersey* v. *Wilson,* 7 *Cranch.* 165. 166, 7. Here, as in the case last cited, is " a contract clothed in forms of unusual solemnity." It is executed and executory. Secondly, the obligation of that contract, is impaired, by the divorce. A stronger case than this can never arise ; for here the contr and all the rights and obligations resulting from it, are utte destroyed.

2. That if the divorce was a *judicial,* and not a *legislative* act, then it is void by the constitution of *Connecticut, art.* 2. Each of the departments is to be " *distinct*" and " *separate*" from the others. The legislature cannot exercise a power, partaking, in any degree, of a judicial character. The power of the judiciary is equally restricted. The constitution of *Connecticut* is a grant, not a limitation, of powers ; it is the source of all the powers of government ; and neither department can exercise any power not granted, much less can it invade the province of another department.

3. That if the act of divorce is valid, for the purpose of dissolving the marriage relation between the parties, still it is not to be construed *retrospectively,* so as to affect the rights of the defendants. *Dash* v. *Van Kleeck,* 7 *Johns. Rep.* 477. 506. 2 *Gallis.* 139. *Bridgeport* v. *Hubbell,* 5 *Conn. Rep.* 243, 4. Prior to the passing of this act, a legal title was vested in the defendants, by the levy of their execution. Shall their title be destroyed, by the arbitrary power of the legislature, and that too, not only without a hearing or an opportunity to be heard, but without the imputation of any fault or negligence on their part ? The act does not purport to go so far ; will the court thus extend it, by construction ?

4. That the act of divorce is a *private* act ; and on that ground, it is not binding on those who were not parties to the petition. 1 *Bla. Com.* 85, 6. and note by *Chitty.* 1 *Kent's Com.* 429. 2 *Bla Comm.* 344, 5. *Jackson* d. *Gratz & al.* v. *Catlin,* 2 *Johns. Rep.* 248. *Catlin* v. *Jackson* d. *Gratz & al.* in err. 8 *Johns. Rep.* 520.

5. That if, on the whole case, the plaintiff is entitled to judgment in her favour, not only her right, but the amount of damages, must be determined by the state of things at the commencement of the suit.

*Starr*
*v.*
*Pease.*

*July, 1831.*

DAGGETT, J. The first great question, presented by the counsel, is, did the right of the possession of this land become vested in the plaintiff, upon the divorce, the husband being the guilty cause? The possession of the premises, upon the established principles of law, became vested in *John L. Lewis,* upon the death of *George Starr,* by virtue of his marriage with the plaintiff. They are liable to be taken in execution, in payment of his debts; or they might have been by him transferred. In either case, his right only would have become vested in the creditor or vendee. This right was commensurate with his title to the premises; and that was a right during the existence of the joint lives of husband and wife, or during the coverture. Upon the authority of adjudged cases, as well as for the soundest reasons, his estate could continue only during the continuance of the coverture. It commenced in *John L. Lewis,* by his being the husband of the plaintiff: it ceases when he ceases to be her husband. By marriage, the wife becomes *sub potestate viri;* is incapable of holding any personal property, or of having the use of any real estate; is incapable of contracting any debts; and he is liable for her support. When this relation is dissolved, by the death of the husband, she is restored to all those rights, which were lost by the coverture. When it is dissolved by divorce, (I speak here of divorce *a vinculo matrimonii,* for no other divorce is known in *Connecticut,*) the law is the same. Deplorable would be her condition, in many cases, were it otherwise; for his liability for her support ceases; and were he still permitted to enjoy her property, it would be rewarding the guilty party for his violation of the marriage vows, and depriving the innocent party of the means of support. I entertain no doubt that this has always been considered the law on this subject, in *Connecticut;* and such it is in *Massachusetts. Legg* v. *Legg,* 8 *Mass. Rep.* 99. *Barber* v. *Root,* 10 *Mass. Rep.* 260.

But it is urged, that this act of the legislature is *retrospective,* and therefore, void. If I were to admit, that all the acts of the legislature, which divest rights already vested, were void,—and there is none less disposed to controvert such a principle,— still the enquiry arises, is the act in question of that character? Before such effect is given to this act, it must have been ascertained, that the defendants had vested rights to be affected, by the act. What right, then, had the defendants to the land in question? It has before been shewn, that they have the right.

which *John L. Lewis* had before the levy of the execution, and no more; but this right was only by virtue of the coverture, and it terminated with the dissolution of the marriage contract. The defendants knew, when they took the land, that they could hold it only during the joint lives of husband and wife, and that upon the death of either, their interest in it must cease. They knew also,—for every man is presumed to know the law,—that if the coverture ceased, by the divorce, their rights dependent upon it, would also cease. As well might it be urged, that a law annexing the punishment of death to a crime, should it happen to be committed, by a tenant for life, was retrospective, and divested vested interests, because it deprived purchasers or creditors under such tenants for life, of their estates.

It is further insisted, by the counsel for the defendants, that this act of divorce is a law impairing the obligation of contracts, and therefore void, by the 10th section of the first article of the constitution of the *United States.* The learned Chancellor *Kent,* in his *Commentaries,* says: " The first enquiry is, how far has the legislature of a state the right, under the constitution of the *United States,* to interfere with the marriage contract, and allow of divorces between its own citizens, and within its own jurisdiction? The question has never been judicially raised and determined in the courts of the *United States;* and it has generally been considered, that the state governments have complete controul and discretion in the case." 2 *Kent's Comm.* 89. In the case of *Dartmouth College* v. *Woodward,* 4 *Wheat. Rep.* 518. this point was incidentally alluded to; and Chief Justice *Marshall* observed, that the constitution of the *United States* had never been understood to restrict the general right of the legislatures of the states to legislate on the subject of divorces; and the object of state laws of divorce was, to enable some tribunal, not to impair a marriage contract, but to liberate one of the parties, because it had been broken by the other. It would be in time to enquire into the constitutionality of these acts, when the state legislatures should undertake to annul all marriage contracts, or allow either party to annul it, without the consent of the other. Judge *Story* spoke to the same effect. He said, that a general law regulating divorces, was not necessarily a law impairing the obligation of such a contract. A law punishing a breach of contract, by imposing a forfeiture of the rights acquired under it, or dissolving it, be-

cause the mutual obligations were no longer observed, was *Middlesex,* not a law impairing the obligation of contracts. But he was July, 1831. not prepared to admit a power in the state legislatures to dissolve a contract without any cause or default, and against the wish of the parties, and without a judicial enquiry to ascertain the breach of the contract.

Starr
*v.*
Pease

The opinions of these eminent jurists are not authoritative; but so far as they bear on the point under discussion, they are in accordance with my views. They go only to this extent; that when a state legislature shall pass a law annulling all marriage contracts, without any cause or default, and against the wishes of the parties, it will be *then* time to decide on the validity of such an act. No one will assert, that the act in question is, in any respect, of the character of those alluded to. It affirmed the contract of marriage; and declared, that the acts proved were such as ought to dissolve it, and resolved accordingly.

It is said, however, that if a state legislature were authorized to make a law giving power to some tribunal to grant divorces, still they cannot, by a sovereign act, dissolve this contract. This, I apprehend, applies only to the fitness of the exercise of the power in question, and not to the constitutional right. It will be exceedingly difficult to establish that act to be a violation of the constitution of the *United States*, when done by the legislature itself, which would not be so, if done by a court, in obedience to law. In the case of *Calder* & ux. v. *Bull* & ux. 3 *Dall.* 386. the supreme court of the *United States* decided, that a resolution or law of the legislature of *Connecticut* establishing a will, was not a violation of the constitution of the *United States.*

A further objection is urged against this act, viz. that by the new constitution of 1818, there is an entire separation of the legislative and judicial departments, and that the legislature can now pass no act or resolution, not clearly warranted, by that constitution; that the constitution is a grant of power, and not a limitation of powers already possessed; and, in short, that there is no reserved power in the legislature since the adoption of this constitution. Precisely the opposite of this, is true. From the settlement of the state there have been certain fundamental rules, by which power has been exercised. These rules were embodied in an instrument, called, by some, a constitution,—by others, a charter. All agree, that it was

*Middlesex,* the first constitution ever made in *Connecticut,* and made too,
July, 1831. by the people themselves. It gave very extensive powers to
the legislature, and left too much (for it left every thing almost)

Starr      to their will. The constitution of 1818 professed to, and in
*v.*
Pease.     fact did, limit that will. It adopted certain general principles,
by a preamble, called *a declaration of rights ;* provided for the
election and appointment of certain organs of the government,
such as the legislative, executive and judicial departments ; and
imposed upon them certain restraints. It found the state sove-
reign and independent, with a legislative power capable of
making all laws necessary for the good of the people, not for-
bidden by the constitution of the *United States,* nor opposed to
the sound maxims of legislation ; and it left them in the same
condition, except so far as limitations were provided.

There is now, and has been, a law in force, on the subject
of divorces. This law was passed one hundred and thirty
years ago. It provides for divorces a *vinculo matrimonii,* in
four cases, *viz.* adultery, fraudulent contract, wilful desertion
and seven years absence, unheard of. The law has remained
in substance the same as it was, when enacted, in 1667. Dur-
ing all this period, the legislature has interfered, like the par-
liament of *Great Britain,* and passed special acts of divorce *a
vinculo matrimonii ;* and, at almost every session since the
constitution of the *United States* went into operation, now
forty-two years, and for the thirteen years of the existence of
the constitution of *Connecticut,* such acts have been, in multi-
plied cases, passed, and sanctioned, by the constituted author-
ities of our state.

We are not at liberty to enquire into the wisdom of our ex-
isting law, on this subject ; nor into the expediency of such
frequent interference, by the legislature. We can only en-
quire into the constitutionality of the act under consideration.
The power is not prohibited, either by the constitution of the
*United States,* or by that of this state. In view of the appal-
ling consequences of declaring the general law of the state, or
the repeated acts of our legislature, unconstitutional and void,—
consequences easily conceived, but not easily expressed,—
such as bastardizing the issue and subjecting the parties to
punishment for adultery,—the Court should come to the re-
sult only on a solemn conviction, that their oaths of office and
these constitutions imperiously demand it. Feeling myself no
such conviction, I cannot pronounce the act void.

Another question was reserved, that is, shall damages be re- *Middlesex,* covered to the date of the writ, or to the rendition of the July, 1831. judgment ? It is understood, that different rules have prevail- Starr ed on this point. I think it most consonant to principle, that *v.* damages should be given only to the date of the writ. Pease.

I would, therefore, advise the superior court, that judgment be entered up for the plaintiff, with damages to the date of the writ.

Hosmer, Ch. J. and Bissell, J. were of the same opinion.

Peters, J. said he could not give an unqualified concurrence. (Upon general principles, he had no doubt, that the act of divorce, in this case, was repugnant to the constitution of the *United States,* as impairing the obligation of a contract ; and that it was void, under the constitution of this state, as an assumption of judicial power, by the legislature. But in view of the decisions in analogous cases and of the appalling consequences of nullifying all legislative acts of divorce, he should acquiesce in the opinion of the Court.) On the point of damages, he concurred without hesitation.

Williams, J., having been retained as counsel for *Lewis,* on the plaintiff's application for the act of divorce, declined giving any opinion as to the validity of that act. He concurred as to the damages.

Judgment to be given for the plaintiff.