Mr. Justice Clayton
delivered the opinion of the Court.
In the year 1821, the legislature of this State passed an act to authorize Belfield Wrenn, as the administrator of John Cook, deceased,'to sell and convey the certificates for three tracts of land in Warren county. The act is in substance as follows ; “ Whereas, it has been represented to this general assembly by Margaret Cook, widow of John Cook, deceased, and Belfield Wrenn, administrator of his estate, that,the said John Cook in his lifetime made entries of three several tracts of land in Warren county; and whereas, it has also been represented that the personal estate of said decedent is insufficient to pay the debts due from said estate, and the instalments still remaining unpaid for said land, one fourth part only having been paid, without serious inconvenience to the widow and orphan of said deceased : — Therefore, be it enacted, that the said Belfield Wrenn, upon entering into bond with sufficient security, to be approved by the Orphans’ Court of Chief Justice thereof of said county of Warren, payable to the said Chief Justice, and his successors in office, in such sum as the said Court or Chief Justice deem sufficient, that he observe the rules and directions of Jaw for .the sale of real estate by administrators, and that he will well and truly account for the proceeds of said sale, and that said proceeds shall be vested in such other property as the said administrator shall deem most for the interest of said widow and orphan jointly, — be, and he is hereby authorized to sell the right which is in said John Cook", deceased, to said tracts of land, at such time and on such conditions as he may think would best promote the interest of said widow and orphan, and to make transfer of the certificates of said tracts of 'land to the purchaser as effectually as the said John Cook in his lifetime could have done.”
In 1838 the present bill was filed by the only child and heir-at-law of said Cook, jointly with her husband, to set aside the sale^ •which was made by the administrator under this act of assembly. The Chancellor, by his decree, declared the sale to be null and void, and directed the same to be set aside ; but refused to decree an account between the parties. From this decree, both parties appealed to this Court.
The first point made in fhe argument is, that the act of assembly *745 above recited, and under which the sale took place, is unconstitutional and void. It is insisted, that it partakes rather of a judicial, than a legislative character, that it is partial in its operation, that it is not a general law of the land, and that in these particulars it violates the Constitution. Acts of legislation of similar character have undergone judicial investigation in several of the highest courts of the Union ; in some they have been sustained, in others they have been declared void. Jones v. Perry, 10 Yerg. 59; 4 New. Hamp. R. 565; Hoke v. Henderson, 4 Dev. 1; Starr v. Pease, 8 Conn. 541; Williams v. Norris, 12 Wheat. 129; Wilkinson v. Leland, 2 Peters, 627; Rice v. Parkman, 16 Mass. 326; 10 Amer. Jurist, 297; Watkins v. Holman, 16 Peters, 26.
This conflict in the decisions of courts of the highest respectability, has induced us to bestow upon this cause much deliberation, and to hold it under consideration an unusual length of time. The point is not free' from difficulty and embarrassment, yet we cannot see that the exercise of the power in question by the legislature is in such direct conflict with the Constitution as to require us to declare the act void. This highest authority of the judiciary should never be exerted, but in cases of plain and manifest violation of that instrument by the legislature.
The legislature might have enacted a general law, authorizing every administrator to do that which by this act this administrator was empowered to do. No constitutional objection would exist to such a law. Indeed, one with provisions in substance nearly identical has been passed, and no constitutional objections have been urged ^against it. H. & H. 418. In Williams v. Norris, 12 Wheat. 129, the Court says, “ If the legislature may dispense with a matter in a general law, why may it not be dispensed with in a particular law, when its effect on the case is precisely the same as if it had been general ? There are, undoubtedly, great and solid objections to legislation for particular cases, but these objections do not necessarily make such legislation repugnant to the Constitution.”
In the case cited from 16 Peters, which arose under an act of the legislature of Alabama, the act was sustained. The Constitution of that State is, in this respect, word for word the same with *746 ours. It is true, the act in that case was passed for the purpose of creating a fund to pay debts. But thfe Court says, “As it regards the question of power in the legislature, no objection is perceived to their subjecting the lands of the deceased to the payment of his debts, to the exclusion of his personal property. The legislature regulates descents, and the conveyances of real estate: To define the rights of debtor and creditor is their common duty. The whole range of remedies lies within their power. They may authorize the guardian to convey the lands of the infant; and, indeed, they may give the capacity, to the infant himself to convey them.” Again they say ; “ This is a question of power and not of policy ; and on such a question we cannot test the act by any considerations of expediency. Whether the act may be open to abuse, whether it be politic or impolitic, is not a matter now before us ; but whether the legislature had power to pass it.” 16 Peters, 62, 63. The principles here laid down extend to other cases than the payment of debts, and warrant the exercise of the power in other instances. We feel safe in following this high authority in sustaining the legislative act, especially when to do otherwise would be to annul a law, because of a very doubtful conflict with the Constitution, to speak of it in the strongest allowable terms.
It is next insisted, that this being a private act of legislation, operates only on those who petitioned for it, and those who claim under them. Comphell’s case, 2 Bland, Ch. R. 209; 2 Black. 279. This view of the matter, which assimilates the act to a private conveyance, struck us at first with much force. But the case of Watkins v. Holman, 16 Peters, is equally conclusive upon this point, as upon the other just noticed, and holds that titles under such acts, where the proceedings are regular, are valid.
It is next objected, that this act was procured by fraudulent representations to the legislature. There is no doubt but that an act obtained by fraud may be annulled by a decree of the Chancery Court. The case, however, to authorize it, must be clearly made out. In this instance, the representation was, that the personal estate was insufficient to pay the debts due and the instalments remaining unpaid for the land, without serious inconvenience to the widow and orphan of the deceased. The only proof of the fraud *747 consists of the settlement made by the administrator, evincing, according to the argument, that no necessity for the sale of the land existed. The whole amount of sales of the personal estate was $2900, seventeen hundred dollars of which was the price of the only negro belonging to the estate, who was purchased by the widow. To this may be added eight hundred dollars of debts due the estate. The amount of debts due from the estate, inclusive of what was due for the land, was $2400. It hence appears, that the whole of the personalty, exclusive of the slave, was insufficient to pay the debts. It would probably have been a great inconvenience to the family to be deprived of the services of the only slave ; and we conclude, that the representation made to the legislature was entirely consistent with truth.
We come next to the objection, that the terms prescribed by the statute itself, in regard to the sale, were not complied with. This was the ground upon which the Chancellor decreed the sale to be void.
Questions of analogous character are not of unfrequent occurrence, and the principles which govern them are now well ascertained. In Gable v. Martin & Bell, 1 How. 561, the Court says, 11 The conduct of an administrator must be regulated by the limitations and restrictions imposed by law. His acts are only legal so far as they are justified by law. The ultimate right of property is in the distributees, and there is no way of divesting them of that right, except for such purposes and in such manner as the law prescribes. The right must remain unimpaired, unless taken away by strict compliance with law.” This is the settled and recognized doctrine. Ventress v. Smith, 10 Peters, 161; Wiley & Gayle v. White, 2 Stew. 331.
The private act in this case comes in place or in aid of the general law, and its provisions are as imperative, and require as entire obedience as those of the general law in ordinary cases. It enacts, that the administrator u upon giving bond and surety that he observe the rules and directions of law for the sale of real estate by administrators, and that he will well and truly account for the proceeds of said sale, and that the said proceeds shall be vested in such' other property as the said administrator shall deem most for the interest of said *748 widow- and orphan jointly, shall be authorized to sell the right which is in said John Cook, deceased, to said tracts of land.” The bond given by the administrator wholly omits the last provision, that the proceeds shall be vested in other property. It is urged in argument that this condition is supplied by another, the same in effect, that he will account for the proceeds. We have no power to substitute an equivalent, and if we had, we do not regard this as an equivalent condition. In 1837, sixteen years after the passage of this act, the administrator made a final settlement of his account, in which he charges himself with $700,. as the price of this land, and shows it to be at that time still due from him. This plainly shows the wisdom of the provision, and proves the necessity of exacting its strict observance. That which was intended as a present, immediate benefit to the widow and orphan by the legislature, was withheld, until one, after the lapse of years, has sunk into the grave, and the other compelled to resort to equity for relief. If the administrator had given the proper bond, compliance with this condition could have been enforced, and the rights''of the parties secured according to the intention of the law-makers.
Upon this point we come to the same conclusion with thq Chancellor, and in this respect direct his decree to be affirmed.
We have examined the record attentively to see if the condition to purchase other property had been complied with after the sale, notwithstanding the failure to give the bond. We cannot discover that it has. If the administrator had in fact done that which he was required by law to do, it would be hard to set aside the sale for the failure alone to give the bond, when the object of the bond had been fully attained. One of the answers sets forth the payment of $700 to the widow in 1833, and alleges that the other $700 was received by the administrator, and returned in his account. The exhibit, which is made in support of this part of the answer, is a receipt for a promissory note of the respondent, and there is no evidence that it was ever paid. We cannot think that anything less than full and complete subsequent compliance would dispense with the previous condition.
There is nothing in the situation of the title to the land at the time it was sold, which prevents the rendition of a decree, declar *749 ing the purchaser, and those claiming under him, trustees.for the complainants.
Neither can we yield to the objection, that no decree can be rendered against Mrs. Newman for the part which she holds, upon- the ground that she is a purchaser for valuable consideration, bona fide, and without notice. That doctrine applies almost solely to -cases of fraudulent conveyances. In these, a purchaser of that kind without notice of the fraud, is not affected by it, although his vendor might be liable. Bean v. Smith, 2 Mason, 252; 4 Kent, 464.
But this is a wholly different question, it is one of power alone. Did the administrator have power to pass the title ? He had not, because he had not done an act which he was bound to perform before the right to exercise the power could come into existence. As the original purchaser acquired no title, neither could the derivative purchaser.
Thus far we affirm the decree. But we are of opinion that an account between the parties should have been directed ; and for this purpose we remand the cause. The following principles will form the basis of the account. Those of the parties who are or have been in possession of the land, will be charged with a reasonable rent for the same, during the time they have been respectively in possession. They will be allowed a credit for all permanent and valuable improvements now on the land, according to their present value ; but not so as to exceed the aggregate value of the rents. In other words, the complainants are not to be required to pay any money for the improvements beyond the rents. Interest will be charged on the rents from the time they fall due.. The complainants will be charged with the money paid to the government of the United States to perfect the title to the land, with legal interest from the time when paid. -They will also be charged with any money paid to them, or to Margaret Cook, the widow of John Cook, deceased, the guardian of the female complainant, either in her own right, or as such guardian, on account of said purchase, likewise with interest. They will be charged with any money paid to the administrator by the purchaser, which was by said administrator applied in payment legally of the debts of his intestate, or actually paid to the complainants or to said Margaret Cook in her lifetime by said *750 Belfield Wrenn, the administrator. In calculating the interest, no rests to be allowed. The respondents not to be credited with any payments to the administrator, not paid by him to said Margaret Cook, or the complainants, nor applied in payment of debts of the estate by him ; because in the absence of the required bond, they would be held bound to see to the application of the purchase-money. The account as to rents and improvements, at the request of either of the parties in possession, may be so taken as to exhibit a separate statement as to each of the tenants.
These directions are not intended to exclude any other matters which may be deemed pertinent by the Chancellor.
The costs of the Court will be paid by the complainants, the respondents having succeeded in their effort to procure the taking of an account.
Cause remanded to the Superior Court of Chancery, the decree being in part reversed.
Chief Justice ShaRKEY gave no opinion.