*Wilson & Smith*, for plaintiff in error.

*Davis & Bissell*, for defendant.

———•◦•———

### LEVINS *v.* SLEATOR.

A divorce granted by the Iowa territorial legislature is good, if it does not appear to have been granted for causes over which the district courts have jurisdiction; and such divorce will bar the right of dower as effectually as if the divorce had been decreed by a court.

#### *Error to Dubuque District Court.*

*Opinion by* GREENE, J. This was an action of right commenced by Ann E. Sleator against Thomas Levins for an undivided third of lots fifty one, fifty two and fifty three in the city of Dubuque, which she claimed as dower under her deceased husband. The defendant's plea denied plaintiff's right to any portion of the lots.

The case was submitted to the court upon the following

Levins *v.* Sleator.

statement of facts: That the plaintiff was lawfully married to David Sleator, in February, 1836; that said Sleator was owner in fee simple of the lots in question during co-habitation; and that said Sleator departed this life sometime in the year 1848.

On the part of defendant, it was admitted by plaintiff, that upon the application of David Sleator, the legislature of the territory of Iowa, passed an act on the 16th day of February 1843, divorcing the said David Sleator from the bonds of matrimony contracted with the plaintiff.

Upon these facts the court decided, that the plaintiff was entitled to dower in the lots and gave her judgment accordingly.

To reverse this decision, it is now contended that the legislature of Iowa had the right to grant divorces; and that a divorce thus granted, will bar the right of dower.

1. Had the legislature power to grant the divorce?  By the organic law, *Rev. Stat.* 32, § 6, it is provided, "that the legislative power of the territory shall extend to all rightful subjects of legislation." This language is general and comprehensive, and shows that our territorial legislature was invested with as much power at least, as is enjoyed by the most unrestrained state legislatures.  The power to pass general divorce laws has been exercised by every state legislature in the union.  Many of them have passed special acts of divorce upon individual applications, and have granted divorces with such facility and upon such meagre showing, as to supercede the necessity of judicial action in such cases.  But however much this power may have been abused by legislative bodies, it is generally conceded, that the state and territorial governments have complete control and discretion over the subject of divorce.  It is a subject that can be regulated by no other than the legislative department of government. Our courts have no inherent common law control over the matter.  All the authority they can exercise in granting a divorce must be derived from legislative enactment.  In England, from whence we derive our common law, a mar-

riage valid in its commencement cannot be dissolved for any cause without a special act of Parliament. 1 Black. Com. 441.

In Maryland, Virginia and South Carolina, no divorce is granted but by special act of the legislature, according to the English practice. But in Virginia the facts constituting the ground for divorce are usually referred to judicial investigation.

While in a colonial condition, the courts in this country had no authority to grant divorces; and after the states became independent, there was no lawful mode of obtaining divorces but by virtue of general or special legislative enactment. This power was exercised by the legislature of New York by passing special acts until 1787; at which time, a law was passed giving authority to the court of chancery to pronounce divorces *a vinculo* in the single case of adultery. Thus the legislature of that state necessarily retained the power of granting divorces in all other cases which might be considered justifiable by a majority of the members. So with our territorial courts and our territorial legislature. Without authority from the legislature our territorial courts had not the power to grant divorces; without such authority the power could only be exercised by the legislature; and if it could not be exercised by our legislature, it clearly could not be exercised by any department of our territorial government. But it is conceded, that the power did exist in the territory; hence as the power was not given by Congress to our courts, as they were invested with no other than general common law authority, as the legislature was the supreme power of the territory, and was invested with all the authority usually exercised by legislative assemblies, it necessarily follows, that the power to grant divorces could only be exercised by the legislature, until the district courts were authorized to do so by the passage of the divorce law. The courts could then only grant divorces for the causes enumerated in the act. For those causes then, the proceedings were authorized to be judicial. The power

Levins *v.* Sleator.

to grant divorces in the cases enumerated, was transferred from the legislature to the district courts. As legislative interposition was no longer required, as the courts were invested with ample authority in such cases to decree divorces, the power of the legislature to entertain concurrent jurisdiction might well be questioned. Where the courts are authorized to grant divorces, the matters to be investigated are of a judicial nature, and the jurisdiction ought to be confined to the courts.

Upon this point Chancellor Kent remarks: "The question of divorce involves investigations which are properly of a judicial nature, and the jurisdiction over divorces ought to be confined exclusively to the judicial tribunals under the limitations to be prescribed by law." 2 Kent Com. 106.

The legislative and judicial departments of the territory were separate and independent. It was not within the province of either to encroach upon the duties and authority of the other. Even in cases where the legislature have not invested the courts with authority to grant divorces, an act ordering a divorce is not exclusively an exercise of legislative power. Although the act may be done in the form of legislation, and in the usual manner of passing a law, still the parties affected, the subject matter submitted, the question to be investigated and the decision made, are in every respect assimilated to judicial proceedings, and should be addressed to the exercise of judicial power. If then this power in the legislatures of the several states had not been generally recognized, by the courts of this country; if so many divorces had not been granted by legislative action, and if the domestic relations and rights of property resulting from such divorces would not be deranged to an alarming extent by the decision, we should at once unite in the conclusion, that the legislature had not authority to grant a divorce in any case. Still we are of the opinion, that the legislature has not the authority to assume judicial power, by granting divorces for such causes as the courts have au-

thority to adjudicate. But it does not follow, that they may not grant divorces for other justifiable causes which are not enumerated in the law. The grounds upon which the divorce at bar was granted are not shown. As the contrary does not appear, we must presume that the legislature acted correctly and granted the divorce for other causes than those enumerated in the divorce law.

But it is contended that the act of divorce is in conflict with that clause in the federal constitution which provides that, "no state shall pass a law impairing the obligation of contracts." This point is presented by counsel, with much ability and is supported by many sound arguments. But still we cannot feel authorized to change the uniform current of judicial decision in relation to legislative divorces. That marriage is a contract, and has connected with it an investiture of rights and property, has never been seriously controverted. And still the doctrine appears to be equally well settled that the legislatures of the several states have constitutional power to provide for divorces, on the principle that marriage is a contract of reciprocal obligations, and that they may determine by law what shall amount to a breach on either side and impose as a penalty the forfeiture of the rights acquired and a release from the contract.

In 2 Kent's Com. 107, it is remarked that "it has generally been considered that the state governments have complete control and discretion" in divorce cases. In *Dartmouth College* v. *Woodward*, 4 Wheat. 518, the chief justice observed that the constitution of the United States had never been understood to restrict the general right of the legislatures of the state to legislate on the subject of divorces; that the object of the divorce was not to impair a contract, but to liberate one of the parties because it had been broken by the other. Another of the judges expressed an opinion to the same effect and remarked that, " a law punishing a breach of a contract by imposing a forfeiture of the rights acquired under it, or dissolving it, be-

cause the mutual obligations were no longer observed, was not a law impairing the obligation of contracts."

Chancellor Kent assumes that in ordinary cases the constitutionality of the laws of divorce, in the respective states is not to be questioned.

In *Starr* v. *Pease*, 8 Conn. 541, it was adjudged that legislative divorces *a vinculo* for causes, were constitutional and valid. Under these authorities we must conclude that the legislative divorce obtained by Sleator is constitutional.

2. The remaining point to be considered is, does this legislative divorce bar the right of dower? It is obvious that a divorce authorized by the legislature has all the validity and force of one decreed by a court. The divorce terminated the relation of husband and wife; consequently A. E. Sleator at the death of David Sleator could claim no benefit from his estate from that relation. She was not his wife; in that particular she was legally dead, and consequently could acquire no dower in his land upon his demise.

After the divorce D. Sleator may have married a second wife and if she had survived him as his wife, her right of dower to his real estate could not be questioned. It will hardly be claimed that there could be two rights of dower in the same estate.

It matters not whether the divorce is legislative or judicial, the same consequences and forfeiture must ensue from either. As this point is virtually conceded in the argument it is unecessary to enlarge upon it. We are of the opinion that the court-below erred in not admitting the legislative divorce as a bar to the action.

Judgment reversed.

*P. Smith* and *B. M. Samuels*, for plaintiff in error.

*W. J. Barney*, *T. Rogers*, *S. Hempstead* and *James Burt*, for defendant.

NOTE.—Other cases decided in 1850, but in which opinions were subsequently delivered, will appear in the 3d vol.