## STAFFORD NAT. BANK v. SPRAGUE and others.

*(Circuit Court, D. Connecticut.   September 15, 1883.)*

1. UNRECORDED DEED—ATTACHING CREDITOR—CONNECTICUT STATUTE.

    By the law of Connecticut an unrecorded deed is ineffectual, as against attaching creditors of the grantor, unless they had notice of such conveyance.

2. SAME—POSSESSION OF GRANTEE—NOTICE.

    As a general rule, open, notorious, and exclusive possession by the grantee, under an unrecorded deed, is sufficient to raise a legal presumption of notice, to an attaching creditor of the grantor, of the existence of such conveyance; but the testimony in regard to the notorious possession must be clear and certain, and such as to make the inference of notice to the creditor beyond serious question.

3. SAME—NOTICE OF TENANCY.

    In such a case notice of a tenancy will not, it seems, amount to constructive notice of the lessor's title.

4. DEED FOR BENEFIT OF CREDITOR—DESCRIPTION OF PROPERTY.

    By the law of Connecticut, where the only description of property conveyed by a deed of mortgage is all the property of the grantors, real and personal, in certain towns in that state, named in such conveyance, the description is insufficient, and the deed conveys no title to the Connecticut lands.

5. SAME—TRUSTEE TO CARRY ON BUSINESS—NON-ASSENTING CREDITORS—FRAUD.

    By the law of Connecticut, where assignments, intended for the benefit of all the creditors, place the entire estate of the debtor beyond the reach of non-assenting creditors, in the hands of a trustee, who is empowered and directed to carry on an extensive and hazardous manufacturing business for an indefinite period, and thus subject the property of the non-assenting creditors to the hazards and uncertainties of such business, the conveyances will be held fraudulent in law, so far as they attempt to convey lands in Connecticut as against non-assenting creditors.

In Equity.

*Ratcliffe Hicks* and *J. Halsey,* for plaintiff.

*Charles E. Perkins,* for defendants.

SHIPMAN, J. In the year 1880 the plaintiff recovered judgment for $6,479.50 in this court in an action at law against Amasa Sprague and William Sprague, having attached as the property of said defendants, at the commencement of the suit on October 1, 1878, the real estate which is the subject of this bill in equity. On June 10, 1880, the plaintiff, to secure this unpaid judgment, filed its certificate of lien upon the attached real estate, in accordance with the statute of Connecticut, whereby a statutory judgment lien was placed upon the land described in the certificate, which lien can be foreclosed or redeemed in the same manner as mortgages upon the same estate. Fifteen pieces of land were described in the certificate. The first seven pieces and the fifteenth piece are in the town of Sterling. For sufficient reasons the plaintiff has abandoned its claim to the seventh piece, and also to the eighth piece, which is in the town of Canterbury, and the facts hereinafter stated in regard to the attached lands will have no reference to those two pieces. The ninth piece is in Scotland, the tenth, eleventh, twelfth, and thirteenth pieces are in Windham, and the fourteenth piece is in Franklin. All the lands now claimed by the plaintiff, except the tenth and thirteenth pieces, were originally conveyed to the defendant Amasa Sprague. Said two pieces were originally conveyed to the defendant William Sprague. All the lands except the thirteenth piece were conveyed to said grantees prior to August 9, 1865. The thirteenth piece was conveyed to William Sprague on September 28, 1866.

On or about August 9, 1865, the A. & W. Sprague Manufacturing Company was formed, its capital stock consisting in general of the property of the firm of A. & W. Sprague. This firm was originally composed of Amasa Sprague, who was the father of the defendants Amasa and William, and William Sprague, Sr. Each of the original partners had died, leaving a widow and children. The estate of neither had been settled, the partnership had not been wound up, and its affairs had not been adjusted; but the business had continued under the same name, with new partners and the acquisition of new property, until in 1865 the firm consisted of said defendants. For the purpose of an ascertainment and adjustment of the rights of all the heirs of the two senior Spragues, and the distribution of the interests of these parties in the common property, the A. & W. Sprague Manufacturing Company was formed, and stock was distributed to the heirs, or the assignees of the title of the heirs, in proportion to their respective interests. For the purpose of vesting in the corporation the property which was held and managed by A. & W. Sprague, except that known as the Quidnick Company property, the defendants Amasa and William, with the representatives of Amasa,

Sr., and William, Sr., and the guardian of the minor children of the deceased daughter of William Sprague, Sr., conveyed all their right and title, whether derived as heirs at law or personal representatives of the said Amasa Sprague and William Sprague, both deceased, or however derived, in possession, action, reversion, or remainder, which the grantors had in and to the property, real, personal, and mixed, wheresoever situated and in whatsoever name any record titles thereof stood, "in the possession of, and held, managed, and controlled by, the firm of A. & W. Sprague," saving and excepting certain specified exceptions, and also excepting the property, rights, credi's, and assets at any time heretofore held and managed by the firm of A. & W. Sprague, which had been charged to the grantors, said Amasa and William, either jointly or severally, on the books of said property so charged." This deed was not recorded in the land records of either of the towns in this state where any attached real estate was situate, and the only deed or conveyance by said Amasa or said William of any of said claimed and attached lands which was ever lodged for record, or was recorded in the records of any of said towns, was the trust deed of December 1, 1873, to Zechariah Chafee, which is hereinafter mentioned and which was recorded in the land records of Windham, Sterling, and Scotland.

On or about November 1, 1873, the A. & W. Sprague Manufacturing Company became deeply insolvent. Its stockholders—Amasa Sprague, William Sprague, Mary Sprague, widow of William, senior, and Fanny Sprague, widow of Amasa, senior—were also severally liable for the debts of the corporation. The property of the corporation and of the individuals, estimated to be worth some $19,000,-000, was widely scattered, and largely consisted in factories. In this state of things, by advice of a committee of their creditors, the A. & W. Sprague Manufacturing Company—William Sprague and Amasa Sprague, as individuals and as copartners under the firm of A. & W. Sprague, Mary Sprague, and Fanny Sprague—mortgaged to Zechariah Chafee all property, real, personal, and mixed, not exempt from attachment by law, which the grantors, or either of them, had in certain specified towns in Rhode Island, (the property in Rhode Island being also more particularly described,) Massachusetts, Maine, and other named states, and "in the following towns of the state of Connecticut, viz., Sterling, Sprague, Scotland, and Windham," but excepting from the conveyance all shares of stock in any corporation belonging to any of the grantors, the same to be transferred to the grantee, upon his request in writing, by way of pledge to secure the performance of the condition of the deed. This mortgage was to secure the notes of said corporation in divers sums, but together amounting to $14,000,000, payable to the order of A. & W. Sprague, and by them indorsed, payable three years from January 1, 1874, with interest from said date at the rate of 7 3-10 per cent. per annum, payable semi-annually, all which notes were placed in the hands

of said Chafee, "to be by him used and applied in the payment or retiring of such of the present outstanding indebtedness and liabilities aforesaid as the holders thereof shall, within nine months from the date of these presents, bring in and surrender and discharge, or agree to extend for the term, and according to the provisions of said notes, as so issued by said trustee, to be countersigned by him." Said property was to be held by said Chafee in trust, but subject to the condition that if the grantors paid the debts which should be brought in under the deed, the expenses of the trust, and the said notes that were issued by the trustee, then the deed was to be void, and until default was made in the performance of the conditions, or until sale under the trusts, or until entry by the trustee, the grantors were to retain the possession and use of the granted premises : "Provided, and it shall be lawful for said trustees or trustee for the time being, at any time, or from time to time, before such default or breach, and with or without previous entry, in their or his discretion, to sell at public or private sale any part or parts of said granted estates and property, and to execute and deliver such deed or deeds as may be necessary or proper to vest in the purchaser" a good title : "and provided further, that said trustees or trustee for the time being may at any time, or from time to time, before default or breach, as well as after, enter upon said granted estates and property, or any part or parts thereof, and take and assume the full and absolute possession and control of the same, and in their or his discretion to continue to run and operate, or to close, the mills or print-works of said manufacturing company, or any or either of them, as said trustees or trustee for the time being shall deem for the best interests of the creditors." The trustee was to apply the purchase moneys (1) to the payment of the expenses of the sales and of said trust; and (2) to the payment of all the debts of the grantors which should be brought in under the deed, and of all the notes that should be issued by the trustee under the deed, accounting to the grantors for any surplus that might remain after the full payment of the debts and issued notes. The trustee was not to be answerable for any loss which might happen to the trust estate unless it should occur by his own neglect or default.

On April 6, 1874, the A. & W. Sprague Manufacturing Company, A. & W. Sprague, Amasa Sprague, and William Sprague, at the request of a large creditor of said corporation, severally executed grants or assignments in fee-simple to Mr. Chafee of his or their "right, title, and interest, legal or equitable, in or to all the property of the grantor described or referred to in the trust deed of mortgage," dated November 1, 1873, "and in or to any and all estate, real, personal, or mixed, of whatever name and nature, wherever situate, not exempt from attachment by law," in trust, to sell the same at public or private sale, and convert the same into money, and the proceeds thereof to apply, first, to the payment of all claims against the grantor provided for in the

mortgage of November 1, 1873, which had been, or should within nine months from said date be, brought in and extended for the time provided in said mortgage, with' authority to the trustee to make earlier payments than in three years; and, secondly, the residue of the proceeds to apply to the payment of all the creditors of the grantor.' The trustee was authorized to run the mills, or either of them, or to allow the grantor to run the same, if for the best interest of the creditors, the profits to be received by the trustee for the purposes above named, and he was not to be liable personally for the expenses or losses arising from running the mills, but the same were to be charged to the trust fund. Neither of these deeds was recorded in the towns of Sterling, Windham, Scotland, or Franklin. The plaintiff did not assent to either of said deeds, whether of mortgage or of assignment, and did not acknowledge in any manner their validity, did not present any claim to the trustee, and has not received any notes, dividend, or payment.

The bill prayed, among other things, in addition to a prayer for a foreclosure of the judgment lien, that the trust deed and assignments might be decreed void and of no effect as against the plaintiff, and as against its rights and said judgment lien.

The position of the plaintiff is founded upon two statutes of Connecticut, and upon what it alleges to be the established course of the decisions of the supreme court of 'errors of' the state in the construction of those statutes, and in regard to the effect of non-compliance with the recording system of the state on the titles of real estate, and upon the principle that the federal courts are bound to follow the course of decisions of the highest court of the state in the construction of its statutes, if the course has been uniform. *Townsend* v. *Todd*, 91 U. S. 452; *Chicago City* v. *Robbins*, 2 Black, 428; *Grafton* v. *Cummings*, 99 U. S. 100.

These statutes are as follows:

"No conveyance shall be effectual to hold lands against any other person but the grantor and his heirs, unless recorded on the records of the town in which the lands lie."

"All fraudulent conveyances, suits, judgments, executions, or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators, or assigns, to whom such debt or duty belongs."

The last statute, "in substance, is pursuant to the statute of 13 Eliz. c. 5, and must receive a similar construction." *Benton* v. *Jones*, 8 Conn. 185.

By the law of Connecticut the unrecorded deed of August 10, 1865, was ineffectual as against attaching creditors of the grantor unless they had notice of such conveyance.. *Carter* v. *Champion*, 8 Conn. 548; *Wheaton* v. *Dyer*, 15 Conn. 307; *Orvis* v. *Newell*, 17 Conn. 101; *Bush* v. *Golden*, 17 Conn. 600; *Theull* v. *Disbrow*, 39 Conn. 318. The

defendants do not claim that there was actual notice, but insist that the plaintiff had implied notice of the conveyance, and of the title of the Sprague Manufacturing Company, from the fact that it had been in possession from 1865 to the date of the trust deed.

The question has not arisen before the supreme court of this state, but probably here, as in other states, as a general rule, open, notorious, and exclusive possession by the grantee under an unrecorded deed is sufficient to raise a legal presumption of notice, to an attaching creditor of the grantor, of the existence of the conveyance. *Mc-Mechan* v. *Griffing*, 3 Pick. 149; *Weld* v. *Madden*, 2 Cliff. 584; *Pomroy* v. *Stevens*, 11 Metc. 244. The remarks of BUTLER, C. J., in *Theall* v. *Disbrow, supra*, apparently recognize the doctrine. But the testimony in regard to the notorious possession of the Sprague Manufacturing Company is meager, whereas it should be clear and certain, and should be such as to make the inference of notice to the creditor without serious question. *Pomroy* v. *Stevens, supra*.

Mr. Guild, the book-keeper or assistant book-keeper of the corporation from November 1, 1867, to October 1, 1873, and since then in the employ of Mr. Chafee, in the same capacity, says that the attached lands have been entered upon the real estate accounts of the company ever since its organization, and that the expenses and taxes of the lands have been paid by the company and charged as a part of its expenses, and that these lands were treated by the company in all respects as were its other lands. The Sterling town clerk testified that the Sterling land was farming land, and that in 1880 the Williams farm "was occupied by a foreman and gang of hands, quarrying and farming," and that the lands described in Exhibits 6 and 8 were occupied by a tenant. The Scotland land is farming land, and in 1880 "was used for farming purposes." This is the entire testimony on the subject, and shows that the corporation deemed these lands to be its own, and treated them as such, but shows nothing of the character of the possession, whether palpable or consistent with the possession of the Spragues, and nothing in regard to the knowledge or notoriety in the respective communities where the land was situate, of the fact that the corporation was in possession, and shows no facts in regard to the acts of ownership by the company from which such knowledge can be inferred. The point to be proved is notice of the unrecorded conveyance to the attaching creditor. Express notice cannot be shown. Notice can be sufficiently inferred by proof of possession of the land by the grantee, which is visible, and accompanied by such manifest acts of ownership as will naturally be observed by others, and impart knowledge that the party in possession is the owner. If, after 1865, there was no manifest change of possession, and there were no acts by which the public, or so much of the public as was conversant with the lands in question, could infer that the corporation, and not one of the Spragues, was the real owner, then the rule which raises an inference of ownership from apparent possession does not

apply to the case; and from the absence of testimony on this point—an absence which is not due to thoughtless or careless preparation—I am led to believe that the apparent ownership was quite consistent with the ownership upon the land records. Some of those lands, perhaps all, were occupied by tenants; but the mere fact that a tenant occupied, without knowing to whom he paid rent as his landlord, is not important. "Notice of a tenancy will not, it seems, affect a purchaser with constructive notice of the lessor's title." Sugden, Vendors, 745; *Flagg* v. *Mann*, 2 Sumn. 486.

The Connecticut decisions are definite that the mortgage deed to Chafee conveyed to him no title to the Connecticut lands in question. Whether assenting creditors can take advantage of this defect of title need not be considered in this case. The only description in the deed of those lands was, all the property of the grantors, real and personal, "in the following towns of the state of Connecticut, viz., Sterling, Sprague, Scotland, and Windham," and it is not denied by the defendants that the deed was, in legal effect, a mortgage. A general description like the foregoing is held in Connecticut to be clearly insufficient in the case of a mortgage. The decisions are founded upon the necessity of strict adherence to the policy of the legislation of the state in regard to the records of titles of land.

In *Herman* v. *Deming*, 44 Conn. 124, the court says:

"It is a fixed principle of our law that mortgage deeds should give subsequent creditors of the mortgagor definite information as to the debt due to the mortgagee, and as to the particular property pledged for its payment. It is only by knowing what the property is that they can learn its value, and it is as important to them to know its value as to know the amount of the debt for which it is mortgaged; and they are entitled to the assistance of the law of registration in obtaining this information. To be told that the mortgage covers all the real estate which the grantor owns in the town of Hartford is to impose upon them the examination of many thousand pages of records; for it is to be borne in mind that the grantor himself may have received his titles by the same general description, and from many different grantors. The recognition by the courts of such a mortgage as valid would be equivalent to the abrogation of the recording system, so far as mortgages are concerned."

This decision was affirmed in *De Wolf* v. *Sprague Manuf'g Co.* 49 Conn. 283, in regard to the deed which is now under consideration, the court, through Judge HOVEY, saying:

"The deed of the A. & W. Sprague Manufacturing Company and others of November 1, 1873, tested by the rule thus established, (in *Herman* v. *Deming*,) does not contain a sufficient description to convey to the defendant Chafee any title to or interest in the premises sought to be foreclosed by the plaintiff, unless it is to be regarded as an assignment, and not as a mortgage or a deed of trust in the nature of a mortgage."

In general assignments to trustees for the benefit of creditors, a general description of the land conveyed is sufficient, and the objection on account of the insufficiency of the description in the mortgage deed does not, probably, apply to the unrecorded assignments of April

6, 1874; but by the decision in *De Wolf* v. *Manuf'g Co., supra,* the assignments, so far as they attempt to convey lands lying in Connecticut, are fraudulent and void as against non-assenting creditors.

The mortgage deed and the assignments, taken together, attempt to convey the entire title of the grantors in the conveyed property to a trustee for the benefit of the creditors of the corporation, and of Amasa and William Sprague, individually and as a copartnership, and of the other stockholders, giving a preference to those who should, within nine months from November 1, 1873, extend the time for the payment of their debts for three years from January 1, 1874. The trustee is authorized to run either or all of the mills and print-works which belonged to the corporation, or to allow the grantor to run the same, the profits being receivable by the grantee, and the expenses to be chargeable to the trust fund. Thus the property, which was a fund for the payment of debts, having been placed beyond the reach of non-assenting creditors, is further subjected for an indefinite time to the hazard of the losses resulting from the running of the mills, and the manufacturing expenses are chargeable to the entire fund, as well that derived from the individual property of the Spragues as from the corporate property. The intent of the mortgage and the assignments was not only, by a set of conveyances professedly for the benefit of all the creditors, to put the entire estate into the hands of a trustee for a period not necessarily definite and determined, but also to subject the property against the will of non-assenting creditors, for a like indefinite time, to the hazards of a business exceedingly extensive, and of uncertain pecuniary profit. "No debtor has a right thus to postpone or put in peril the rights of his creditors without their consent, and a conveyance which attempts so to do, or which is executed for the purpose of depriving creditors of their right to enforce their just claims against the property of their debtor by placing it beyond their reach or control for an unlimited, indefinite, or uncertain period, is, in conscience, as well as in law, fraudulent." *De Wolf* v. *Sprague Manuf'g Co., supra.*

This legally fraudulent character is apparent upon the face of the deeds, and parol evidence is of no avail that both the grantors and the majority of the creditors thought that the arrangement was for the best interest of all the creditors, and that the experiment would be a success, because neither the grantors nor a majority of the creditors have a legal right, in an assignment for the benefit of all the creditors, to subject the property of the assignor for an indefinite time to the hazards of enterprises which are not only far more extensive than those incidental to the winding up of the business, but are a continuation of the business of the debtors to its full extent. The cases which justify the carrying on of a manufacturing business by a trustee until the stock is exhausted, or the purchase of new materials to enable the stock to be worked up, have no analogy to this case, in which the deeds contemplated the carrying on by the trustee

of a vast business. Notwithstanding the motive of the debtors and the assenting creditors was not tinged with bad faith, the deeds were of such a character that the law pronounces them to be fraudulent towards non-assenting creditors, and refuses to lend its aid to the coercion which would compel them to enter into a business which they disapproved.

The *De Wolf Case* was decided upon demurrer to the bill, and the court held the mortgage to be void, because it appeared upon the face of the deed that the property of the corporation was to be applied to the payment of the debts of the Spragues individually. In this case parol evidence has been given of the reason tor turning the property of the corporation and all its stockholders into a common fund upon one trust for the payment of all the debts of the grantors. I therefore do not think that the De Wolf decision upon that point can be regarded as of binding authority in a case in which other facts are shown than those stated in the bill and admitted by the pleadings.

The defendant insists that the lands were held by the Spragues from 1865 to 1873 in trust for the corporation, and that the mortgage deed was a transfer of the lands to the corporation for the benefit of its creditors, and was, therefore, simply an execution of the trust, and that thereafter those lands were not subject to be appropriated at the instance of the individual creditors for their debts.

As between the corporation and the Spragues, the latter were trustees for the former; but as between the Spragues and their creditors the lands were permitted to be subject to attachment for the debts of the legal owners from 1865 to 1873. If, prior to any action by a creditor, the lands had been conveyed by a sufficient deed, they would no longer have been open to attachment, but the transfer by the mortgage deed, being governed by the rules pertaining to mortgages, and being operative only as a mortgage, did not convey the title to the Connecticut land to Chafee, and it is not material that, if it had been some other kind of a deed, it would have conveyed a valid title. The deed attempted to transfer the lands to Chafee by way of mortgage, and if it was inoperative to vest a title in him, the lands still remained liable to attachment.

Let there be a decree for foreclosure, and that the trust deed and assignments are not valid to vest a title in Chafee to the lands in question as against the plaintiff, a non-assenting and attaching and judgment creditor.