STATE EX REL. GEORGE BARRY *vs.* ELI GETTY AND JAMES REYNOLDS.

First Judicial District, Hartford, May Term, 1897. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Section 2092 of the General Statutes authorizing the organization of a corporation in connection with any Roman Catholic church or congregation, provides that the two lay members of such corporation shall be appointed annually "by the committee of the congregation." *Held* that this method of appointment was mandatory, and that an election by the congregation of two individuals as lay members, gave them no title to the office.

[Argued May 4th—decided June 15th, 1897.]

JUNE, 1897.                287

Vol. 69          State ex rel. Barry v. Getty et al.

INFORMATION in the nature of *quo warranto* to determine the legality of the respondents' election as lay members of St. James Catholic Church of Danielson, brought to the Superior Court in Windham County and tried to the court, *Shumway, J.;* facts found and judgment rendered for the respondents, and appeal by the relator for alleged errors in the rulings of the court. *Error, and cause remanded.*

The information charged the respondents with usurping the offices of " lay members " of the corporation known as St. James Catholic Church of Danielson. The respondents justified solely by virtue of an election " by the congregation " of St. James Church; the plea admitting " that there was no committee of the congregation appointed at said meeting."

Upon the trial the State asked the court to hold and rule that neither Reynolds nor Getty had been legally elected lay members of said corporation, " because such election must be by a committee of the congregation duly appointed by it for that purpose, as provided in the statute." This claim the court overruled. A further claim was made that upon the facts found the meeting of the congregation was so informally and illegally called and conducted, that the action of the meeting in electing the respondents as lay members was wholly void. The court overruled this claim and held that the meeting was lawfully called and conducted, and that the vote of the meeting electing the respondents as " lay members," invested each with a legal title to that office. The assignment of errors present no questions of law except those involved in these two rulings.

*Charles E. Perkins* and *Charles E. Searls*, for the appellant (relator).

*Thomas McManus* and *Henry E. Burton*, for the appellees (respondents).

HAMERSLEY, J. " It is the settled policy of this State to so frame its legislation that each denomination of Christians may have an equal right to exercise ' religious profession and

288          JUNE, 1897.

State ex rel. Barry *v.* Getty et al.          Vol. 69

worship,' and to support and maintain its ministers, teachers
and institutions, in accordance with its own practice, rules
and discipline; and this policy is conformable to the provi-
sions of our Constitution." *Christ Church* v. *Trustees, etc.*, 67
Conn. 554, 565. In pursuance of this policy our statutes pro-
vide a scheme for the formation and conduct of corporations
known as "ecclesiastical societies," which may "hold and
manage all property belonging to them, appropriated to the
use and support of public worship, and may receive any grants
or donations, and by voluntary agreement establish funds for
the same object." General Statutes, § 2051 *et seq.* This
scheme is arranged with special reference to the customs of
the denomination of Congregationalists, which prior to the
adoption of a constitution formed a sort of established church;
and while furnishing ample provision for the needs of many
denominations, is not consistent with the customs of some.
And so we have special legislation for "societies of particular
denominations," and among these the Roman Catholic. This
legislation is contained in §§ 2092, 2093 and 2094 of the
General Statutes.*

---

*Sec. 2092. A corporation may be organized in connection with any
Roman Catholic Church or congregation in this State, by filing in the office
of the Secretary of the State a certificate signed by the bishop and the
vicar-general of the diocese of Hartford, and the pastor and two laymen
belonging to said congregation, stating that they have so organized for the
purposes hereinafter mentioned; and such bishop, vicar-general, and pastor
of such congregation shall be members, *ex officio*, of such corporation, and
upon their death, resignation, removal, or preferment, their successors in
office shall become such members in their stead. The two lay members
shall be appointed annually, by the committee of the congregation; and
three members of this corporation, of which one shall be a layman, shall
constitute a quorum for the transaction of business.

Sec. 2093. Such corporation may receive and hold all property conveyed
to it for the purpose of maintaining religious worship according to the
doctrine, discipline, and ritual of the Roman Catholic Church, and for the
support of the educational or charitable institutions of that church; pro-
vided that no one incorporated congregation shall at any time possess an
amount of property, excepting church buildings, parsonages, school-houses,
asylums, and cemeteries, the annual income from which shall exceed three
thousand dollars.

Sec. 2094. Such corporation shall at all times be subject to the general
laws and discipline of the Roman Catholic Church, and shall receive and

Such special legislation is not passed unless upon application of some religious body, and is intended to be framed in accord with what the legislature understands to be the peculiar customs and wishes of the applying denomination. But when the law is passed the corporations created under it are the creatures of the law and must obey its requirements. The law for the Roman Catholics provides merely for corporations to hold the legal title to the property they may receive for the purposes named in the statute. They have no power of application ; that can be done only in accordance with the general laws and discipline of the Roman Catholic Church. They differ from corporations established under laws relating to most other denominations and which provide for the incorporation of the individuals of a particular religious body, with the power not only of holding property but of managing and controlling their own concerns. Prior to 1866, when the law was passed, property appropriated to the uses of the Roman Catholic Church was held in trust by the bishop personally ; the practical effect of the law is to enable the bishop to hold the property as a corporation. A careful examination of the sections cited, shows that while there are local corporations connected with local churches or congregations, nevertheless each corporation consists of five members, of whom the bishop, his vicar-general, and pastor must form the majority ; and § 2094 provides that whenever the local corporation sees fit to surrender its charter, all the property vests in the bishop and his successors as a corporation sole.

This peculiarity creates a special difficulty in defining the meaning of " Roman Catholic congregation," as used in the statute, and in passing on any alleged illegality in the conduct of a meeting of such congregation. Doubtless the authentic ecclesiastical laws of the Roman Catholic Church

enjoy its franchises as a body politic, solely for the purposes mentioned in the preceding section; and upon the violation or surrender of its charter, its property, real and personal, shall vest in the bishop of the diocese and his successors, in trust for such congregation, and for the uses and purposes above named.

would have to be consulted, and their meaning as applicable to the subject determined.

It is not necessary, however, to discuss this question in the present case, for the law is mandatory that the lay members of each corporation, without the presence of one of whom no corporate act can be performed, must " be appointed annually by the committee of the congregation." It is claimed that the law is modified by a clause in the decrees of the Baltimore Council, which reads : " It is for the Bishop to judge not only as to the necessity of employing such laymen auxiliaries (*i. e.* "lay members "), but also to their number and the manner of selecting them." It seems apparent that this language was not used for the purpose of attempting to prescribe the number and manner of selecting the lay members of corporations organized under § 2092. The advisory letter of the chancellor of the diocese, which appears in the finding, states that the first step in the choice of lay delegates is that " the members of the congregation, not the pastor, should elect a committee." But if it were possible to assume that the church decree quoted was intended to alter the law, such intention can produce no result. Doubtless if it were authoritatively represented to the legislature that the Roman Catholics of the State desired a change in the law, the change would be made. But the legality of the organization of this corporation must be tested by the law. The lay members can only be appointed by " the committee of the congregation." Whatever may be the appropriate method of selecting that committee, it is certain the respondents have not been so appointed. This is admitted in the plea and is found by the court. The election by the congregation gave the respondents no title. As this is their only justification, it follows that upon the facts found by the court judgment of ouster should have been rendered.

The issues were somewhat confused by the error of the parties in framing their pleadings as if the proceeding of *quo warranto* were a civil action under the Practice Act. This fault was commented on in the case of *State ex rel. Hosford* v. *Kennedy, ante,* p. 220.

There is error in the judgment of the Superior Court, and the case is remanded to be proceeded with in conformity to this opinion.

In this opinion the other judges concurred.