Christ Church *v.* Trustees, etc.    Trustees, etc., *v.* Christ Church.

THE PARISH OF CHRIST CHURCH *vs.* THE TRUSTEES OF
DONATIONS AND BEQUESTS FOR CHURCH PURPOSES.

THE TRUSTEES OF DONATIONS AND BEQUESTS FOR CHURCH
PURPOSES *vs.* THE PARISH OF CHRIST CHURCH.

Third Judicial District, Bridgeport, April Term, 1896. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, JS.

A trustee holding property lawfully and unconditionally conveyed to it in
trust for a public charitable use, cannot reconvey such property to the
grantor or donor, without a violation of its duty as such trustee.

The parish of Christ Church in New Haven, in order to obtain a sum of
money given to it by Trinity Church upon that condition, conveyed a
certain piece of land with its church edifice and rectory, to the Trus-
tees of Donations and Bequests for Church Purposes, in trust for the
sole use and benefit of the grantor, but without liability to debts or
incumbrances of any kind, so long as the grantor should exist and be
in union with the convention of the diocese of Connecticut and in
communion with the Protestant Episcopal Church of the United
States; and thereafter, in trust for the sole benefit and use of said
Trinity Church, so long as it should remain in like communion; and
then, to hold the property for such uses as would most nearly accom-
plish the object of the trust and promote the interests of the Protestant
Episcopal Church generally.   The trustee was authorized by charter
to acquire and hold property given to it for the uses specified in the
conveyance, and duly accepted the trust.   Its charter also authorized
it to sell or otherwise dispose of the property held by it in trust, with
the consent of the Diocesan Convention; and this body, upon the
petition of Christ and Trinity Churches, gave its consent to a recon-
veyance of the property by the trustee to Christ Church.   Prior to
such consent Trinity Church had released to Christ Church any in-
terest it had in the property by virtue of the trust deed.   Upon suits,
one of which was brought by Christ Church to compel the Trustees
of Donations and Bequests for Church Purposes to execute a deed of
reconveyance, and the other by the trustee for advice as to its duty in
the premises, it was *held* :—

1. That the claim of Christ Church that the trust deed, although absolute
in form, was in fact a mortgage to secure the re-payment of a loan
advanced by Trinity Church, was expressly contradicted by the find-
ing and by the legal conclusion of the trial court based thereon.
2. That evidence of the statements and representations made by members
of Christ Church parish at the meeting which authorized the execu-
tion of the trust deed, in support of the foregoing claim, was properly
excluded by the trial court as irrelevant to any fact in issue.

3. That the objects for which the property was conveyed were charitable, and upon the acceptence of the deed the property became, by force of § 2951 of the General Statutes, a trust fund forever appropriated to the uses for which it had been granted.

4. That the limitation of one trust upon another, as specified in the deed, was not unlawful, there being but one trustee and but one charitable use.

5. That the release by Trinity Church, if of any effect whatever upon the trust, did not invalidate it; nor did it operate as a renunciation of the contingent interest of Trinity Church.

6. That the use specified in the trust deed was not so indefinite as to be void for uncertainty.

7 That the authority given the trustee by its charter, to sell or otherwise dispose of the estate held by it in trust, with the consent of the Diocesan Convention, related merely to a change in the form of the trust fund, and did not authorize a violation or termination of the specific trust contained in the trust deed.

8. That the trust was valid and continued under the protection of the law until its purposes had been accomplished, and could not be lawfully terminated by the agreement of the parties before the court.

[Argued April 29th—decided May 14th, 1896.]

THE first of the above named cases—*Parish of Christ Church* v. *Trustees of Donations and Bequests for Church Purposes*—a suit to compel the defendant to execute and deliver to the plaintiff a release deed of certain real estate, was brought to the Superior Court in New Haven County and tried to the court, *Hall, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings of the court.   *No error.*

The second case—*Trustees of Donations and Bequests for Church Purposes* v. *Parish of Christ Church*—a suit by a trustee for advice as to the proper execution of its duties, was brought to the Superior Court in New Haven County, and reserved by that court, *Shumway, J.,* upon an agreed statement of facts, for the consideration and advice of this court.   *Superior Court advised that the plaintiff cannot, upon the facts found, make an unconditional re-conveyance to the defendant of the property described in the trust deed, without a violation of its duty as trustee.*

In this court the two cases were presented and argued as one.

Prior to 1877, parishes of the Protestant Episcopal Church

were organized and incorporated under the general law, which provides (§ 2051) that such societies "shall hold and manage all property belonging to them; appropriated to the use and support of public worship, and may receive any grants or donations, and by voluntary agreement establish funds for the same object." The general law also prescribes, in detail, the regulations for membership, annual and special meetings, etc.

In 1863 "The Trustees of Donations and Bequests for Church Purposes" was chartered by a special Act of the General Assembly. 5 Private Acts, 562. Section 2 of this Act declares : " The object of this Act is to enable said Trustees to take, hold, manage and use such funds as they may acquire under the provisions of this Act, for the support of the institutions, parishes and missionary work of the Protestant Episcopal Church in the diocese of Connecticut, and for the promotion of any of its general interests, according to the doctrines, discipline, rites and usages of said church;" and further provides that " to this end said trustees are hereby empowered to take and hold any and all transfers, gifts, devises and bequests of real and personal estate which may be made to them on trust, condition or otherwise, and to execute and perform any and all conditions, uses, and trusts, which may be imposed thereon, or connected therewith, and to manage, invest, re-invest (and with the consent of the convention of the diocese) sell, demise, convey, or otherwise dispose of, said estate, and to appropriate and apply the net income thereof to any and all of the purposes and objects above declared ; subject, however, in each and every case, to the specific trusts, directions, limitations or conditions contained in such transfer, gift, devise or bequest."

The charter further provides that the bishop of the diocese shall *ex officio* be " a member of said board of trustees and president thereof ; that vacancies may be filled by the convention, which may also remove members for cause ; and for an annual report to the convention of the doings of the board and concerning the property held by them." In 1873, § 2 of the charter was amended by the insertion of the words

which appear in parenthesis in the above quotation.    8 Private Acts, 626.

In 1877, a public Act provided specially for the organization and powers of parishes.    Public Acts of 1877, p. 250. Sections 2075 and 2076 of the General Statutes are identical with sections 1 and 2 of this Act, and provide: (§ 2075) "All ecclesiastical societies which have been heretofore organized, and which may be hereafter organized in this State, in communion with the Protestant Episcopal Church in the United States of America, shall be known in the law as parishes as well as ecclesiastical societies, and shall have power to receive and hold by gift, grant, or purchase, all property, real or personal, that has been or may be conveyed thereto for maintaining religious worship according to the doctrine, discipline, and worship of said church, and for the support of the educational and charitable institutions of the same, and shall have and exercise all the ordinary powers of bodies corporate."    (§ 2076)  "The manner of conducting such parishes, the qualifications of membership of the parish, and the manner of acquiring and terminating such membership, the number of the officers of the parish, their powers and duties and the manner of their appointment; the time of holding the annual meeting of the parish, and the manner of notification thereof, and the manner of calling special meetings of the parish, shall be such as are provided and prescribed by the constitution, canons, and regulations of said Protestant Episcopal Church in this State."    The Act of 1877 further provided that existing societies should continue to act under the existing law until the diocesan convention should prescribe regulations in pursuance of the authority granted in § 2 of the Act, and that the continuous corporate existence of the societies should not be affected by the Act.

The main facts found by the Superior Court are as follows:—" The Parish of Christ Church " is an ecclesiastical corporation in communion with the Protestant Episcopal Church in the United States, duly organized under the laws of this State.    In 1885, Christ Church was the owner of the

land described in the deed of trust, on which stood their
church building and rectory.   At that time Christ Church
decided to pay all its indebtedness and raised for that pur-
pose by contribution $5,000, and then applied to " The Society
of Trinity Church Parish " (the mother church) for $1,000
to make up the balance.   With these sums, $5,000 raised by
contribution and $1,000 from Trinity Church, the whole in-
debtedness was paid.   The $1,000 appropriated by Trinity
Church, was furnished upon condition that Christ Church
should give the trust deed in question.   Said sum was not
regarded by either parish as a loan; it was not intended that
it should be repaid, and it has not been repaid.   On Decem-
ber 10th, 1885, Christ Church Parish duly passed the following
vote :  " At a special meeting of the society of Christ Church
Parish of New Haven, legally warned and held at said church
on Thursday, the tenth day of December, A. D. 1885, it was
*voted :* That the Society of Christ Church Parish of New
Haven convey to the Trustees of Donations and Bequests for
Church Purposes, of the diocese of Connecticut, a corpora-
tion legally incorporated by the General Assembly of the
State of Connecticut, all that certain piece of land with the
church edifice and rectory building thereon standing, situ-
ated in the city of New Haven. . . . To have and to hold
the said premises with all the privileges and appurtenances
thereof to the said Trustees of Donations and Bequests, their
successors and assigns forever, in trust, however, for the sole
use and benefit of the Society of Christ Church Parish afore-
said, to be used, occupied and improved by said Society of
Christ Church Parish in accordance with the constitution
and canons of the Protestant Episcopal Church of the United
States, under the control and management of the warden
and vestry of said parish, without being subject to debts,
liability or incumbrance of any kind, so long as said Society
of Christ Church Parish shall exist in union with the con-
vention of said diocese, and in communion with the Protest-
ant Episcopal Church of the United States; and on its
ceasing to be in union with said convention and in commun-
ion with said Protestant Episcopal Church, then to be used,

occupied, enjoyed and improved by the Society of Trinity Church Parish of said New Haven, so long as it shall exist in union with said convention, and in communion with said Protestant Episcopal Church; and on said Society of Trinity Church Parish ceasing to exist in union with said convention, and in communion with said Protestant Episcopal Church, then to have and to hold said premises for its, said corporation's (the Trustees of Donations and Bequests for Church Purposes), sole use, benefit and behoof, to hold and dispose of said property for such uses as will most nearly accomplish the object desired in the building of said Christ Church, and in the creation of this trust, and promote the interests of the Protestant Episcopal Church generally."

The vote also appointed and authorized an agent to execute and deliver, in behalf of the parish, a deed of the premises in accordance with the provisions of the vote, and to affix the corporate seal thereto. On December 22d, 1885, a deed of the land described in said vote, upon the trusts therein expressed, was executed and delivered by the agent appointed for that purpose. This deed was not given by Christ Church Parish as a mortgage, nor as security for a loan. There was no agreement or understanding between Christ Church Parish and the Trustees of Donations, or between that parish and Trinity Parish, respecting the purpose or character of the trust deed in question, other than that set forth in the deed itself. After delivery of said deed the Trustees of Donations, etc., duly passed the following vote : "Voted, that we accept in trust from Christ Church, New Haven, land with rectory building thereon, as described in their vote of December 10th, 1885." No consideration for said deed was paid by the grantee. From the time of receiving said deed the Trustees of Donations, etc. has held and now holds, in trust, in accordance with the terms of said deed and the terms of its charter, the property conveyed by the deed aforesaid. On April 26th, 1895, the Parish of Trinity Church executed and delivered to Christ Church Parish a quitclaim deed of the land in question, containing the following clause : "Hereby releasing and conveying to said

releasee whatever and all interest and estate said Society of Trinity Church Parish has or ought to have in and to the above described land under and by virtue of a certain deed from the Society of Christ Church Parish to The Trustees of Donations and Bequests for Church Purposes, of the diocese of Connecticut, bearing date December 22d, 1885."

On June 11th, 1895, the Diocesan Convention duly passed the following vote : " Resolved, that upon the petition of the Parish of Trinity Church and the Parish of Christ Church, both of New Haven, the consent of the Convention of the Diocese is hereby given that the title to the property of the Parish of Christ Church, New Haven, now held by the Trustees of Donations and Bequests for Church Purposes, be reconveyed to said Parish of Christ Church by said Trustees." On or about June 11th, 1895, Christ Church Parish made demand for a reconveyance of said title, but said Trustees of Donations, etc., declined to comply with said demand. Relying upon its belief and upon advice of counsel that when Trinity Church should release its claim, and said Convention of the Protestant Episcopal Church consented to release, Christ Church Parish would have a right to a quitclaim from The Trustees of Donations etc., said last named parish has built a new church on said property at a cost of $80,000, for the purpose of carrying on the work of the said Protestant Episcopal Church, in union with the Convention of the Diocese of Connecticut.   The Trustees of Donations etc. is ready and willing to make a reconveyance to Christ Church Parish, if it may do so consistently with the duties of its trust.   A copy of the constitution of the Protestant Episcopal Church in the Diocese of Connecticut was made part of the finding.

Upon the trial of the first case, for the purpose of proving that the trust deed was given by the plaintiff to the defendant upon the understanding that the same was a mortgage to secure the payment to said Parish of Trinity Church of said $1,000, and that a release deed would be executed by the defendant to the plaintiff upon payment of said sum of $1,000 to said parish, the plaintiff offered to prove the state-

ments and representations to that effect made by members of the plaintiff parish at the meeting of the 10th of December, 1885, and before the passage of the vote authorizing the conveyance in trust.    To the admission of that evidence counsel for the defendant objected, and the court excluded the same; the plaintiff excepted to said ruling.

*Charles H. Fowler* and *Joseph B. Morse,* for the appellant (plaintiff).

The evidence of the understanding upon which the vote to convey was obtained, was admissible.    *Ward* v. *Ward,* 59 Conn., 188, 198 ; *Douglas* v. *Chatham,* 41 id., 211, 235 ; *Wilson* v. *Waltersville School District,* 44 id., 157, 159 ; *Pacific Iron Works* v. *Newhall,* 34 id., 67 ; *Arbeiter* v. *Day,* 39 id., 155, 157 ; *Purcell* v. *Burns,* 39 id., 429, 433.    This vote as recorded, is not the vote of the parish after legal warning of the object of the meeting.    It is void for want of notice. The deed made upon that vote is a *nudum pactum.    Bloomfield* v. *Charter Oak Nat. Bank,* 121 U. S. 121, 129 ; *Hayden* v. *Noyes,* 5 Conn., 391 ; *Williard* v. *Killingworth,* 8 id., 247 ; *Baldwin* v. *North Branford,* 32 id., 54 ; *Brooklyn Trust Co.* v. *Hebron,* 51 id., 22.    We have the right to show that a deed absolute on its face is intended only as security by the parties in interest.    *Reading* v. *Weston,* 8 Conn., 121 ; *Osgood* v. *The Thompson Bank,* 30 id., 34 ; *Sheldon* v. *Bradley,* 37 id., 324 ; *Mead's Appeal,* 46 id., 431 ; *Lounsbury* v. *Norton,* 59 id., 170.    The beneficiaries have the same right to release a contingent interest to the tenant in possession, as they would have to release a present interest.    *Smith* v. *Pendel,* 19 Conn., 107, 112 ; 1 Perry on Trusts, § 68 ; 2 Bl. Com., 234.    "A use cannot be limited upon a use."    The springing use in "the Protestant Episcopal Church generally" is so remote, so indefinite, and without consideration, that it is void.    Wash. on Real Prop., § 8.    Gilbert on Uses, 194 n.    *Gilbertson* v. *Richards,* 5 H. & N., 454 ; *Franciscus* v. *Reigart,* 4 Watts, 118 ; *Jackson* v. *Meyers,* 3 Johns., 388 ; *Storrs Ag. Sch.* v. *Whitney,* 54 Conn., 342 ; *Adye* v. *Smith,* 44 id., 60, 66 ; *Bristol* v. *Bristol,* 53 id., 242, 254 ; *White* v. *Fisk,*

22 id., 54; *Conn.* v. *Bliss*, 47 id., 592, 603.   Christ Church holds the use, seizin and possession forever.   The third contingent use is destroyed by the release deed of Trinity Church.   2 Washburn, 5th Ed., 462, sd. p. 140, § 1; 3 Wood on Conv.; 296; *Chudleigh's Case*, 1 Rep., 120, 130; Tiedeman on Real Property, 419; *Sargent* v. *Burdett*, 22 S. E. Rep., 667.   The trustees now say they desire to reconvey "if they may do so consistently with their duties."   It is their duty to reconvey upon demand, not to stand upon the order of doing it, but to do it at once.

*Henry C. White* and *Leonard M. Daggett*, for the appellee (defendant).

Is there now any duty, originally imposed upon the trustee by the acceptance of the trust deed, which duty requires for its complete performance that the legal title to the property in question continue to be held in trust?   If there is no such duty, then the trustee may with propriety make the conveyance.   But if any such duty still remains, and the purposes for which this trust deed was given have not been fully executed, the trustee is unwilling to make a reconveyance.   The trustee has no desire to abandon or renounce duties voluntarily assumed, but to faithfully execute under the direction of the court its duties to the State, to Christ Church and to the Protestant Episcopal Church.   The amendment to the charter is a mere limitation upon the original grant of power. It merely provided that trust property should not be sold until after the convention had given its consent.   The convention derives no power from the amendment, to originate or compel action.   Its consent does not relieve the trustee from responsibility for a proper exercise of its power.   The amendment restricted the trustee's action.   The vote of the convention removed the restriction.   The intent of the deed was not only to protect the property against debt, but also to secure it to the permanent use of the church.   There is not a word in the deed which looks toward the termination of the trust; not one which can be interpreted to mean that it will ever again be possible for the defendant to obtain the

unrestricted control of the property. When no power of revocation is reserved, a valid trust can only be terminated by either the fulfillment of all of its purposes, or by the consent of all parties in interest. 2 Perry on Trusts, § 920; *Bailey* v. *Lewis*, 3 Day, 450 ; *Langdon* v. *Congregational Society*, 12 Conn., 113 ; *Storrs Agricultural School* v. *Whitney*, 54 id., 342 ; *Thurston, Petitioner*, 154 Mass., 596 ; *Hildreth* v. *Eliot*, 8 Pick., 293; *Falk* v. *Turner*, 101 Mass., 494; *Viney* v. *Abbott*, 109 id., 300 ; *Sewall* v. *Roberts*, 115 id., 262 ; *Sargent* v. *Baldwin*, 60 Vt., 17; *Stone* v. *King*, 7 R. I., 358 ; *Gulick* v. *Gulick*, 39 N. J. Eq., 401. No power of revocation was reserved in the deed here in question, nor is it claimed that the trust was not validly and properly created. The deed from Christ Church created a valid trust for a charitable use. Gen. Stat., § 2951; *Goodrich's Appeal*, 57 Conn., 275 ; *Bishop's Fund* v. *Eagle Bank*, 7. id., 476. The trust cannot fail for uncertainty. The designation of the beneficiaries of the trust is clearly valid under the decisions of this court. The statement of the purposes to which the gift shall be applied by a corporation donee, if those purposes be within its corporate power, does not prevent such corporation from receiving the gift as beneficiary. *Atwater* v. *Russell* 49 Minn., 57 ; *Matter of Teed*, 59 Hun, 63, 69. A gift will be upheld which is (1) charitable in its nature and given to a defined class of beneficiaries from among whom some person or corporation is given a power of selection ; or (2) given for a use which the law can see is charitable to a corporation empowered by the law of its incorporation to administer the trust expressed, or (3) given to a corporation whose objects are by the law of its incorporation charitable. *Coit* v. *Comstock*, 51 Conn., 352 ;. *Goodrich's Appeal*, 57 id., 275 ; *Bristol* v. *Bristol*, 53 id., 242 ; *Camp* v. *Crocker*, 54 id., 21 ; *White* v. *Fisk*, 22 id., 31, 52. No person, corporation or convention, acting either alone or in conjunction with others, has power to divert this property from the charitable use expressed in in the trust deed. *Trustees of Union Baptist Ass'n* v. *Huhn et al.* (Texas, 1894), 26 S. W. Rep., 755. Application of the property to other uses than that expressed in the deed, is

564 MAY, 1896.

Christ Church v. Trustees, etc.    Trustees, etc. v. Christ Church.

forbidden by statute.    Gen. Stat., § 2951; *Dailey* v. *New Haven*, 60 Conn., 314, 325; *People* v. *Powers*, 83 Hun (N. Y.), 449; *Russell* v. *Allen*, 107 U. S., 163.    The Trustees of Donations, if they were so disposed, could not terminate this trust.    *Storrs Agricultural Sch.* v. *Whitney*, *Goodrich's Appeal*, *Dailey* v. *New Haven, supra; Treat's Appeal*, 30 Conn., 113.    The beneficial interest given by the trust deed to the Trustees of Donations and Bequests, was upon sufficient consideration and is not revocable.    *Sprague* v. *Thurber*, 16 R. I., 454.    There is no reversionary interest in the donor of a charitable trust, which gives to him or to his heirs an interest in its execution or non-execution.    *Harvard College* v. *Society for Promoting Theological Education*, 3 Gray, 280; *Brown* v. *Meeting Street Baptist Society*, 9 R. I., 177; *Sanderson* v. *White*, 18 Pick., 328; *Dutch Church in Garden Street* v. *Mott*, 7 Paige Ch., 78, 82; *Commonwealth* v. *Pauline Home*, 141 Pa. St., 537; *Fuller* v. *Plainfield School*, 6 Conn., 532, 544, 545; *Am. Asylum* v. *Phoenix Bank*, 4 id., 172.

HAMERSLEY, J.    The important question presented by these cases is contained in the prayer for relief in the action brought by the Trustees of Donations and Bequests for Church Purposes, namely : can the Trustees, etc., in view of the terms of its charter, the trust deed and the other facts found, make an unconditional reconveyance to the Parish of Christ Church, without a violation of its duty as trustee ? The answer involves the consideration of three questions:—

1.  Is the deed valid ?    It is claimed that an absolute deed was given upon an understanding between the parties to the deed, that it was in fact in the nature of a mortgage to secure the payment of a loan of $1,000.    There are no facts to support this claim.    It is distinctly found by the trial court that no such understanding existed; and the conclusion of the court that the deed was not given as a mortgage, nor as security for a loan, is the legal conclusion from the facts found.    Counsel for Christ Church intimated in argument that the parish vote authorizing the deed, was passed at a meeting not legally warned for that purpose; but such inti-

mation was not admitted by the counsel for the Trustees, etc., to be true, and is a matter entirely outside the record. For the purposes of this decision the finding of the trial court that the vote, appearing by the parish records to have been passed at a meeting legally warned, was duly passed, must be held conclusive.

2. Is the trust created by the deed a valid trust? It is the settled policy of this State to so frame its legislation that each denomination of Christains may have an equal right to exercise "religious profession and worship," and to support and maintain its ministers, teachers and institutions, in accordance with its own practice, rules and discipline; and this policy is conformable to the provisions of our Constitution. The law authorized the parish of Christ Church to acquire all property appropriated to the support of public worship and of the educational and charitable institutions of the Protestant Episcopal Church in the United States, and by voluntary agreement to establish funds for the same object. The charter of the Trustees, etc., authorized that corporation to acquire by transfer, gift, or will, funds for the support of the institutions, parishes and missionary work of said church, and for the promotion of any of its general interests. The parish of Christ Church had the power to transfer the land on which its church edifice and rectory stood, to the Trustees, etc. The fact that such transfer was made in order to obtain a sum of money given on that condition, supplies an additional and valuable considertion for the transfer. The estate so transferred was for objects which are plainly charitable, and upon the acceptance of the deed of trust became, by force of the statute of charitable uses (§ 2951), a trust fund forever appropriated to the uses for which it had been granted.

It is claimed that because the grantor has directed that the benefit of the fund shall be received first by Christ Church Parish, then in a certain contingency by Trinity Parish, and then by other beneficiaries, the trust is invalid. The trust deed contemplates but one trustee, but one charitable use; two beneficiaries are named by the grantor, the subsequent beneficiaries, if any, are to be selected by the trustee. The

limitation of one trust upon another in such case is not unlawful.  *Storrs Agricultural School* v. *Whitney*, 54 Conn., 342.

It is difficult to see how the release of Trinity Parish to Christ Church Parish, can have any effect upon the trust; it certainly cannot invalidate it.  The interest is the right to use and occupy the land for public worship in accordance with the constitution and canons of the church, an interest —in the absence of authority in the trust deed—insusceptible of conveyance to another.  This interest does not vest in possession until Christ Church Parish has ceased to exist in connection with the diocesan convention and in union with the church; and by the terms of the deed and the law of the State, Christ Church Parish cannot in that event be the recipient of any interest.  The release of Trinity Parish is ineffectual to increase or alter the interest of Christ Church Parish; nor can it be treated as a renunciation of the contingent interest of Trinity Parish.  If the occasion shall arise, Trinity Parish may claim and enjoy the beneficial use of the land, notwithstanding the release.

It is further claimed that the last use specified in the trust deed, *i. e.*, " such uses as will most nearly accomplish the object desired in the building of said Christ Church, and in the creation of this trust; and promote the interests of said Protestant Episcopal Church generally "—is too indefinite to be administered.  We cannot now determine the particular construction which must be given to this language in case the trustee should ever be called upon to administer the trust.  The facts in these cases do not call for such construction, and perhaps the parties before us are not sufficient to make it binding.  The only question we can now consider is whether the language may fairly be so construed that the use is not void for uncertainty.  On this question we entertain no doubt.  By the terms of the deed and the law, the charitable use for which this estate is appropriated is the maintenance of the religious worship and the support of the charitable and educational institutions of the Protestant Episcopal Church in the United States; the successive beneficiaries named by the grantor are Christ Church Parish and

MAY, 1896. 567

Christ Church *v.* Trustees, etc. Trustees, etc., *v.* Christ Church.

Trinity Parish; we think that the language may fairly be construed as authorizing the trustee, in case the beneficiaries named become incapable of receiving the benefit, to select, in accordance with its judgment, such beneficiaries from a well defined class of church corporations, as are lawfully capable of receiving the benefit. *Coit* v. *Comstock*, 51 Conn., 352, 377. Recent legislation has recognized to a limited extent the doctrine of *cy pres* in the administration of trusts created by deed (*Woodruff* v. *Marsh*, 63 Conn., 125, 136); but it is unnecessary, if it were competent, to invoke any aid from that doctrine in the present case.

3. Is the trust created by the deed terminated, and if not, can the trust be lawfully terminated by the agreement of the parties before the court?

The charter of the Trustees, etc., authorizes it to sell or otherwise dispose of the estate held by it in trust, with the consent of the diocesan convention; this power is limited by the specific directions that may be contained in the deed of trust, and relates to a change in the form of the trust fund; it does not authorize a violation or termination of the specific trust contained in the transfer of the estate. The vote of the diocesan convention of June 11th, 1895, did not direct and could not lawfully authorize the Trustees, etc., to violate the specific trusts created by the trust deed. It is not competent for the parties now before the court to terminate the trust. When a fund has once been devoted by unqualified deed or gift to a public charitable use, it comes under the protection of the law which says it shall forever remain to such use according to the true intent and meaning of the grantor; which intent and meaning must be settled by the law. The donor cannot withdraw the gift; the trustee cannot release the trust. *Langdon* v. *Congregational Society*, 12 Conn., 113; *Storrs Agricultural School* v. *Whitney*, *supra*. The Parish of Christ Church, considered merely as a corporation, is not the sole beneficiary of the trust; the beneficiaries include " each individual member of the society and their posterity, so far as they shall remain within the influ-

ence of the gospel as there dispensed." *Langdon* v. *Congregational Society, supra.*

Nor is there any ground for disposing of the estate as if the purpose of the trust had been accomplished. That purpose includes the preservation of the estate by the legal ownership of the Trustees, etc., " without being subject to debts, liability, or incumbrance of any kind so long as said Society of Christ Church Parish shall exist and be in union with the convention of said diocese and in communion with the Protestant Episcopal Church in the United States." Such a purpose is in support of the doctrine and usages of that church, which forbids the consecration of any house of worship until the building and ground on which it stands are fully paid for and free from any incumbrance, and requires the property to be secured from danger of alienation from those who are in communion with that church, and makes it unlawful for any corporate body authorized by law to hold such property, to incumber or alienate any consecrated church without the previous consent of the bishop and standing committee of the diocese. Dig. of Can., Title 1, Can. 26. The church in this State, as a constituent part of the church in the United States, acknowledges the authority of this canon, and it bears upon every parish in union with the diocesan convention. *Goodrich's Appeal from Probate*, 57 Conn., 275, 283. The Trustees, etc., was chartered for the express purpose (among others) of holding property for the support of parishes according to the doctrine and usages of the church, subject to the specific direction and conditions contained in the transfer of such property. Plainly this purpose of the trust, which the State, in pursuance of its policy to authorize each denomination of Christians to hold and use property appropriated to such charitable use in accordance with its own doctrines and usages, has authorized Christ Church Parish to create, and the Trustees, etc., to accept, has not been accomplished, and therefore the trust must continue under the protection of the law. The State has provided various agencies and given ample authority to the Protestant Episcopal Church, for acquiring and holding prop-

erty for the support of its institutions according to its doctrine and usages; but when in pursuance of such authority an estate has been appropriated to a public and charitable use under specific trusts, the State does not authorize the church, nor any of its agencies, to violate a settled public policy and destroy such trust. The limitations and conditions of a trust are within the control of the agencies of the church by which it may be created; but the created trust is under the protection of the State. It follows that the Trustees, etc., cannot, upon the facts found by the court in these cases, make an unconditional reconveyance of the land described in the trust deed to the Parish of Christ Church, without a violation of its duty as trustee.

The second prayer of relief in the action brought by the Trustees, etc., *i. e.*, "to advise the plaintiff in view of the premises, in what manner it shall discharge its duty so that it may properly and safely execute the trust aforesaid,"— asks relief to which the plaintiff is not entitled upon the facts found.

The views we have expressed dispose of all the questions raised by the appeal in the case of *Parish of Christ Church* v. *The Trustees, etc.*, except an error claimed in the exclusion of evidence. The finding states: "Upon the trial of said cause, for the purpose of proving that said deed (the trust deed) was given by plaintiff to defendant upon the understanding that the same was a mortgage to secure the payment to said Parish of Trinity Church of said $1,000, and that a release deed would be executed by the defendant to the plaintiff upon payment of said sum of $1,000 to said parish, the plaintiff offered to prove the statements and representations to that effect made by members of the plaintiff parish at the meeting of the 10th of December, 1885, and before the passage of the vote" authorizing the execution of the trust deed.

Such evidence was properly excluded by the court; it had no relevancy whatever to any fact in issue, and it does not appear that any evidence was given or offered in connection with which it might become relevant.

In *The Parish of Christ Church* v. *The·Trustees of Donations and Bequests for Church Purposes*, there is no error in the judgment of the Superior Court.

In *The Trustees, etc.,* v. *The Parish, etc.*, the Superior Court is advised to render judgment that the plaintiff cannot, upon the facts found, make an unconditional reconveyance to the defendant of the property described in the deed of trust, without a violation of its duty as trustee.

In this opinion the other judges concurred.