The Bridgeport Public Library and Reading Room *vs.* The Burroughs Home et als.

Third Judicial District, New Haven, January Term, 1912.

Hall, C. J., Prentice, Thayer, Roraback and Wheeler, Js.

Under the terms of § 4026 of the General Statutes, as well as under the general principles of equity, a charitable trust will not ordinarily be permitted to fail through any improper action of the trustees in administering the trust.

The courts, upon proper proceedings, will correct any abuse, and restore the charitable gift to its original and proper purpose; but the property will not revert to the heirs or personal representatives of the donor, by reason of any such violation of the trust by the trustees, unless there is an express provision for such forfeiture and reversion in the instrument of gift.

Since the decision in *Norwalk Street Railway Co.'s Appeal*, 69 Conn. 576, it has been the settled law of this State that its Constitution is a grant and not a limitation of power, and that, by the distribution of the powers of government into three distinct departments, legislative, executive, and judicial, each confided to a separate magistracy, the exercise of judicial power is forbidden to the General Assembly.

By the will of a testatrix who died in 1883, she gave a lot, particularly described, with the buildings thereon, to trustees, to forever maintain and keep the same as a public library and reading room known and called "The Burroughs Public Library Building," with particular provisions as to the use of the buildings for said purpose. By the lapse of time and change of circumstances, the lot and buildings have become unsuitable for a public library. In 1907 the General Assembly passed an Act authorizing the trustees to sell the premises, and to invest the proceeds in a new lot and building, which should bear the same name and be devoted to the purposes specified in the will. *Held:*—

1. That the sovereign power of the State is fully adequate to authorize the trustees to sell the trust property and to purchase other property to be devoted to the same trust.

2. That the power is not a legislative, but a judicial one, to be exercised by the proper court having chancery powers.

3. That therefore the Act of the General Assembly is invalid and of no effect.

4. That since the will contained no provision for forfeiture of the trust estate in case of the violation of the trust, the residuary devisees cannot by any grant or release confer power on the trustees to make such change of the trust property.

Submitted on briefs January 17th—decided March 7th, 1912.

Suit to determine the question of the plaintiff's title and right to sell certain real estate devised to it under the will of Catherine E. Pettengill of Bridgeport, deceased, brought to and reserved by the Superior Court in Fairfield County, *Curtis, J.*, upon a finding of facts, for the advice of this court.

Mrs. Catherine E. Pettengill, who died in 1883, by her will gave to the board of directors and their successors in office forever, of the Bridgeport Public Library and Reading Room, a tract of land situated on the corner of Main and John streets in the city of Bridge-

port, and having a block of buildings thereon, "to have and to hold the said premises," the language of the will being now recited, "with the appurtenances thereof unto the said Board of Directors and their successors forever, as special trustees for the use and benefit of the said Bridgeport Public Library and Reading Room and according to the terms following, to wit:

"1. I direct that no bond shall be required of such special trustees by the Probate Court.

"2. I direct that the said land and the buildings now or hereafter standing thereon shall be forever known and called by the name of 'The Burroughs Public Library Building.'

"3. I direct and require that they shall forever maintain and keep said buildings and premises in good condition. That the exterior of said buildings shall not be mutilated in any part by bolts, or bars, or otherwise, for any purpose, nor shall any signs, hand-bills, or anything of that description, be allowed thereon.

"4. I desire that the first story and basement be rented, and such other parts of the building as may not be needed for the use of Library and Reading Rooms; but I leave this matter entirely to the wise and sound discretion and judgment of said Board of Directors; and if an income be derived from the rent of said building, then,

"5. I direct said Board of Directors to apply said income; first, to the payment of all bills for making repairs and improvements of said buildings and premises, and of all legal charges, assessments and the like, if any, on the same; and second, to expend the remainder for the use and benefit of the said Library and Reading rooms, in such way as shall seem to them best to advance the general purposes of the institution.

"6. My object is to benefit as much as possible the inhabitants of my native place and of this vicinity, and

also to perpetuate the name of my family; and I hope that the trustees will honestly and faithfully discharge the trusts I have committed to them, and that this gift will be of great and permanent benefit to this community."

The will contained a residuary clause, the effect of which is that the defendant "The Burroughs Home," an incorporated institution, is the beneficiary of any residue.

In 1907 the General Assembly adopted a resolution, being No. 388 and found at page 356 of the Special Laws of that year, which, among other things, purports to empower the directors of the Library and Reading Room to sell the premises so given by Mrs. Pettengill and to invest the proceeds in a new site and building to be purchased, erected, and used for the uses of the institution. The resolution also purports to authorize "The Burroughs Home" to release and convey to the directors of the Library and Reading Room all right, title, or interest it may have in the Main Street property by force of Mrs. Pettengill's will. It further authorized these directors to make application to the Superior Court, setting forth the terms of the will, their desire to erect a more commodious building in a more suitable location, to bear the name and inscription the will prescribed for the present building, and the action, if any, taken by the Burroughs Home in making a release or conveyance, and praying for an adjudication, upon the facts alleged and proven, "to determine: (a) whether said board of directors have complete title as trustee aforesaid to the property devised to them under said eighth article or clause, so that without risk of forfeiture or jeopardizing their trust estate they can so sell said property so devised and apply the proceeds as aforesaid; provided, that said building so to be erected shall bear the name and be

inscribed as aforesaid; (b) If they have no such right without a release or conveyance from said The Burroughs Home, whether said The Burroughs Home can release and convey to said board of directors, as trustees aforesaid, all the right, title, and interest that said The Burroughs Home has or may have to said property devised, so that said board of directors can so sell said property so devised and can transfer to the purchaser thereof an absolute title thereto; (c) whether, in order to have such effect, the consideration for such release and conveyance must be equal to the full market value of the property, or whether such consideration may be the fair value of the interest of the said The Burroughs Home therein in view of the remote probability that said board of directors will do anything with said property to jeopardize their trust estate, or whether such consideration may be a nominal sum." The course of procedure upon this application was prescribed, and the court directed to take jurisdiction of it, and determine all the questions of law or equity presented.

This action was brought under the authority thus given, and advice is asked in answer to the three questions embodied in the resolution.

The Burroughs Home was made a party defendant, and appeared. It filed no pleadings, and is not opposed to the sale of the premises. The heirs of Mrs. Pettengill are unknown. They were made defendants by general description, and they have by publication received as full and adequate notice of the pendency of the action as could be given them. None appeared.

By reason of the changed conditions, due to the growth of the city and other causes, the land and buildings in question have become unsuitable for the purposes of a public library and reading room, and the board of directors desires to sell them, and to use

the avails in purchasing a more suitable site, and in erecting thereon a more commodious library and reading room building to bear the same name and inscription as the present one. The proceeds of a sale would be sufficient to make such purchase and to erect such building.

*Thomas M. Cullinan* and *John S. Pullman,* for the plaintiff

*Morris B. Beardsley* and *Samuel F. Beardsley,* for the Burroughs Home, defendant.

PRENTICE, J. The advice of the Superior Court is asked in answer to three questions. The first and fundamental one is whether or not the trustees have complete title to the premises in question so that they can sell them and apply the proceeds in a prescribed manner without risk of forfeiture or jeopardizing the trust estate. The question thus presented, if taken with any degree of literalness, is one which seeks information as to the consequences which would attach to a sale and application of proceeds as provided, if made. It does not call for advice as to the adequacy of the authority of the trustees to sell, or as to whether title could be given, if they now undertook to convey. It, and the other two questions, appear to assume that the trustees have all the authority which could be bestowed upon them, and their solicitude apparently arises from a fear that if they make a conveyance of the property which Mrs. Pettengill placed under the trust which they are executing, the trust would be defeated, and a forfeiture to her heirs or residuary legatee result. However this may be, no one of the questions propounded directly calls for an adjudication as to the nature and extent of the power of the trustees. Neither does any

one of them indirectly call for such adjudication. This latter fact follows from the nature of the trust under which the property is held, and the peculiar incidents of trusts of its class. It is a public charitable trust, and as such is brought within the application of the general principles governing trusts of that nature, and of General Statutes, § 4026.

The existence of this statute, first enacted in 1684, renders it unnecessary to inquire whether or not its provisions of present pertinence add anything to what the general principles of equity would supply, did it not exist. It at least removes from the domain of discussion the policy of our law, and contains an unmistakable statutory declaration as to the permanent and abiding character of the devotion to the charitable use which attaches to gifts intended for such use by the donor.

Wherever this policy prevails, whether it be declared in statute, or otherwise deduced, it is well settled that the trust will not ordinarily be permitted to fail through any improper action on the part of the trustees in their administration of the trust. There may indeed be express conditions so embodied in the instrument creating the trust as to make manifest the intention of the donor that for the breach of them there shall be a forfeiture and a reversion of the fund. But nothing which even remotely partakes of the character of such conditions enters into Mrs. Pettengill's will. Her provisions are all such as are regarded as either explanatory of her object, indicative of her purpose to make the trust a perpetual one, or regulations for the guidance of the trustees in the management of the trust. Similar provisions have been before the courts repeatedly, and upon several occasions before the United States Supreme Court, and held not to constitute conditions in the strict sense of that term, but regulations for the

Bridgeport Public Library & Reading Room *v.* Burroughs Home.

guidance of the trustees, or explanations of. the terms under which the donor intended the estate to be managed. In not a few of these cases the terms of the gift were much more suggestive of conditions than the present, even going to the extent of expressly forbidding a sale of the property. *Stanley* v. *Colt,* 5 Wall. (U. S.) 119, 165; *Ould* v. *Washington Hospital,* 95 U. S. 303, 311; *Jones* v. *Habersham,* 107 U. S. 174, 183, 2 Sup. Ct. Rep. 336. This proposition and its natural corollary is well stated in Perry on Trusts (Vol. 2, 6th Ed.) § 744, as follows: "If the trustees of a charity abuse the trust, misemploy the charity fund, or commit a breach of the trust, the property does not revert to the heir or legal representative of the donor, unless there is an express condition of the gift that it shall revert to the donor or his heirs, in case the trust is abused; . . . If a good public charity is created by gifts upon condition or with limitations, or by gifts for particular purposes, or to a certain end, the heir cannot defeat the charity by reason of a breach of the trust or perversion of the charity; but the courts upon proper proceeding will correct all abuses, and restore the charitable gift to its original purpose. Heirs and personal representatives of a donor have no beneficial interest reverting or accruing to themselves from the breach or non-execution of a trust for a charitable. use." The following are a few of the cases which support this statement of the law. *Vidal* v. *Girard,* 2 How. (U. S.) 127, 191; *Ould* v. *Washington Hospital,* 95 U. S. 303, 312; *Sanderson* v. *White,* 18 Pick. (Mass.) 328, 333; *Chapin* v. *School District,* 35 N. H. 445, 455; *Dutch Church* v. *Mott,* 7 Paige Ch. (N. Y.) 77, 82; *Women's Christian Association* v. *Kansas City,* 147 Mo. 103, 126, 48 S. W. 960. This court has repeatedly recognized its underlying principle. *American Asylum* v. *Phœnix Bank,* 4 Conn. 172, 178; *Langdon* v. *Plymouth Congregational Soc.,* 12 Conn.

Bridgeport Public Library & Reading Room *v.* Burroughs Home.

113, 128; *Storrs Agricultural School* v. *Whitney,* 54 Conn. 342, 345, 8 Atl. 141; *Christ Church* v. *Trustees,* 67 Conn. 554, 567, 35 Atl. 552.

It follows that no forfeiture would result from any attempt on the part of the trustees to alienate the property, that neither Mrs. Pettengill's heirs, nor the Burroughs Home as residuary legatee, have any right, title, or interest in it to be made the subject of a release or conveyance, and that any release or conveyance by any or all of these parties would be ineffectual as enlarging the title which the trustees have, as adding to their power to alienate the property, or as helping to give validity to any attempted alienation of it.

This conclusion, as we have already had occasion to observe, results from considerations quite apart from any question as to the authority of the trustees to convey, and the legal propriety of any attempt on their part to do so. This question of authority, however, is so interwoven with those which the complaint propounds that we ought not perhaps in fairness to ignore it.

Whatever authority the trustees may have to sell and convey the premises in question must be derived from the terms of Mrs. Pettengill's will creating the trust or from the resolution of the General Assembly. 15 Special Laws (1907) p. 356. It is clear that the will gives them no such power. The resolution purports to do so. It contains other provisions, some of which are unusual, but its second section, in clear and positive language, undertakes to empower the trustees to sell, and to direct as to the investment of the proceeds for the uses of the trust. In so far as it was competent for the General Assembly to confer such authority, it has beyond doubt here done so.

The decision of the Supreme Court of the United States in *Stanley* v. *Colt,* 5 Wall. (U. S.) 119, supported

by others prior and subsequent, removes from the field of discussion any question as to the existence of a power in the sovereignty of the State fully adequate to bestow upon trustees administering a public charitable trust authority as to its administration such as the General Assembly attempted to confer in the present instance. *Perin* v. *Carey,* 24 How. (U. S.) 465, 501; *Ould* v. *Washington Hospital,* 95 U. S. 303, 312; *Jones* v. *Habersham,* 107 U. S. 174, 183, 2 Sup. Ct. Rep. 336.

This being so, we have only to inquire whether that power was vested in the General Assembly at the time this resolution was adopted. *Stanley* v. *Colt,* 5 Wall. (U. S.) 119, was a case which arose in this State. It involved a determination of the validity and effect of a resolution of our General Assembly of substantially the same purport as the present. It was held that it was adequate to confer the power of sale. This conclusion, however, was expressly placed upon the ground that under the law and practice of this State the General Assembly was vested with the exercise of chancery powers.

There can be no doubt that the court in that case, speaking in 1866, was justified in making the fundamental assumption it did as to the powers of our General Assembly by reason of both the utterances of this court and the not infrequent legislative practice./ Conceptions of our governmental organism, which had grown up under the charter, long survived the adoption of the Constitution in 1818. They were repeatedly acted upon, and found expression in the opinions of this court. In *Starr* v. *Pease,* 8 Conn. 541, 547, it was declared that the Constitution was a limitation and not a grant of power, that it found the State sovereign and independent, with a legislative power capable of making all laws necessary for the good of the people, not forbidden by the Constitution of the United States,

nor opposed to the sound maxims of legislation, and that it left it in the same condition except as far as limitations were provided. In *Pratt* v. *Allen,* 13 Conn. 119, 125, the same principle was reasserted, and it was said that with few limitations the Constitution left the legislative department as it found it. Eleven years after the decision in *Stanley* v. *Colt* this court again asserted its continued allegiance to the doctrine of the earlier cases referred to, and further demonstrated that the Supreme Court of the United States was not without justification in founding its decision upon the premise that our General Assembly was vested with the exercise of the judicial powers of chancery. *Wheeler's Appeal,* 45 Conn. 306.

In *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 37 Atl. 1080, 38 id. 708, the question of the nature of our Constitution and the effect of its division of the powers of government into three distinct departments, each confided to a separate magistracy, to wit: the legislative, the executive, and the judicial, again came under review, and had an exhaustive discussion. The result was that the doctrine of *Starr* v. *Pease* and *Pratt* v. *Allen* was unanimously repudiated, and *Wheeler's Appeal* expressly overruled. Since that decision there has remained no doubt that our Constitution is to be construed as a grant and not as a limitation of power, and that the exercise of judicial power is forbidden to the legislative branch of the government, as the legislative is to the judicial.

The foundation upon which the decision in *Stanley* v. *Colt* was made to rest was thus removed, so that, if its conclusion that legislative action in this State can furnish authority for a sale of trust property under conditions like those then and now present is to remain unshaken, it must find support upon some other basis than the broad one that it is competent for our General

Assembly to exercise the chancery powers of courts of equity. The legislative power must be found somewhere outside of the judicial domain, and within the legislative, or it is nonexistent.

The opinion in *Stanley* v. *Colt* assumes, and substantially asserts, that the power which was invoked in aid of the public charity then concerned was a chancery power; and so it was; and so it is here under precisely similar conditions. It is one which developed through the exercise of the extraordinary jurisdiction of the English Lord High Chancellor, the keeper of the King's conscience, and lies wholly within the sphere of that jurisdiction. It concerns a trust, which is emphatically a matter of conscience, and a charitable trust, which is peculiarly the subject of a court of equity's care and solicitude. Bispham's Principles of Equity (8th Ed.) § 8; *Stanley* v. *Colt*, 5 Wall. (U. S.) 119, 169. The power is one which has come into our American jurisprudence in conformity with the English original, and is an adjunct of the judicial power. Its exercise involves an appeal to the conscience of the chancellor through an application duly made, an inquiry, and a determination embodying the exercise of discretion. These are peculiarly judicial functions. The judicial power includes such power as the courts, under the English and American systems of jurisprudence, have always exercised in legal and equitable actions. *Callanan* v. *Judd*, 23 Wis. 343, 349. We have no occasion to attempt to define the exact limits of either the judicial or the legislative power, or to draw the dividing line between the two. It is certain, wherever that dividing line may be or however indefinite it may be at points, that jurisdiction over this charitable trust, to see that it is properly and beneficially administered, that the purpose of the donor does not fail, and that the interests of the beneficiaries be subserved, under

changing conditions and with the lapse of time, belongs to the judicial department of the government, and is in no respect an incident of the legislative.

The resolution of the General Assembly in question, in so far as it purports to confer authority upon these trustees, must therefore fail of its purpose. The courts, in the exercise of their chancery powers, are alone competent to confer such authority. That authority not having been obtained, any attempt on the part of the trustees to sell the property would be in excess of their powers.

The Superior Court is advised to render its judgment that the plaintiff board of directors has no present power to sell or convey said property; that the only authority competent to confer such power is a court of equity, when properly invoked; that a sale and conveyance by them under authority so conferred would not result in a forfeiture; and that in the event of such sale and conveyance a release or conveyance by either the Burroughs Home or the heirs at law of the testatrix, Catherine E. Pettengill, would not be necessary to give title.

No costs in this court will be taxed in favor of either party.

In this opinion the other judges concurred.