CLAUDIO, PLAINTIFF AND APPELLEE, *v.* ORTIZ, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Ponce in an Action of Debt.

No. 2429.—Decided May 16, 1921.

CONSTITUTIONAL LAW — MEMBERS OF LEGISLATURE — CONTINUANCE — JUDICIAL POWER.—An attorney who is also a member of the Legislature can not obtain as a matter of right the continuance of a hearing for which a day has been previously set by the Supreme Court by alleging that the Legislature is in session and invoking the immunity conferred upon him by Act No. 34 of March 11, 1915. So much of the said act as grants this exclusive privilege is unconstitutional and void as being against the judicial power.

EXTENSION OF TIME—STATEMENT OF CASE.—An order of a district court extending the time within which to file a statement of the case after the time allowed by law had expired is null and void.

The facts are stated in the opinion.

*Mr. R. Arjona Siaca* for the appellant.

*Mr. C. del Toro Fernández* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The appellee moved to dismiss this appeal.

The attorney for the appellant, in reply to the motion to dismiss, filed an application to postpone the hearing of the motion and in this application as a sole ground set up that he was a member of the Legislature of Porto Rico; that the Legislature was actually in session, and that he claimed his privilege or immunity as a member of the Legislature in accordance with the Act of March 11, 1915.

The essential part of the Act in question is as follows:

"Section 2.—Members of the Legislature in all cases, except treason, felony or breach of the peace, shall be privileged from arrest during the session of the Legislature, and for fifteen days next before the commencement and next after the termination thereof; nor shall any member during the same period be summoned to attend as a witness in any court except with the consent of the House of the Legislature of which he is a member. If any member of the Legislative Assembly of Porto Rico is interested in any matter, action or proceeding, whether as a party, necessary witness, or one of not more than two attorneys of record for one of the parties, such matter, action or proceeding shall not be set for hearing, argument or trial while the Legislature is in session, nor within the twenty days preceding or succeeding said session, and the setting of any hearing contrary to the provisions of this Act shall be null, unless such member of the Legislature shall have given his express consent therefor. In all cases the court in which said action or proceeding is pending shall immediately suspend the hearing or argument set, on petition of any person entitled to this privilege."

As the question of the constitutionality of the act had not been discussed, the court set a day for the hearing of the question and on the merits. The appellee filed a brief. The appellant, or rather his attorney, filed none. The appellee in his brief maintains that this law is in opposition to the Fourteenth Amendment to the Constitution of the United States, or so much of it as is applicable, as follows:

"All persons born or naturalized in the United States, and sub-

ject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.''

To develop his theory the appellee says, among other things, that this law should be declared unconstitutional because it is contrary to reason, is arbitrary, is unjust, and is not uniform in its application. The appellee further says that some of the lawyers who belong to the Legislature ask for hearings in their affairs and attend court while the Legislature is in full session when their financial interest or the convenience of their practice impels them to do so, but that some of these same attorneys do not hesitate to use their privilege as members of the Legislature to tire out the opposite party and to subject the said adversary to undue delays and annoyances.

More especially, the appellee supposes cases where he maintains that continuance would cause the person subjected to this claim of legislative privilege to be deprived of property without due process of law. He asks us to suppose a case where a child might be indefinitely deprived of support for more than four months. He supposes a case of a father being unable to get control of his minor child. Likewise, attention is drawn to proceedings in unlawful detainer. To these examples might be added matters like injunctions and receiverships and other special proceedings like applications for administration in cases of decedents.

We are not at all convinced that the appellee may not be right in saying that this law in its application might deprive a person of property without due process of law. Property rights might be directly affected and it makes no difference that in the case before us no such result would flow. ''In discussing the constitutionality of this act it is to be remem-

bered that the question is to be determined, not by what has been done under any particular instance *but by what may be done under and by virtue of this authority."* Colón v. *Lisk*, 153 N. Y. 194, and cases cited therein.

Treating this privilege or immunity claimed as a right to a continuance, it would generally be the denial of such a right of continuance which would more properly and directly come under the Fourteenth Amendment to the Constitution of the United States. Nevertheless, where there was an enforced continuance by reason of a legislative privilege, then in cases of unlawful detainer or injunctions and receiverships or other cases that might be imagined, this supposed right to a continuance in his adversary might, and probably would in many instances, tend to deprive one of property, if not absolutely, for a time at least. However, in this somewhat summary consideration of the question and in the absence of a full discussion by the parties, we prefer to base our opinion on a somewhat different ground.

The privilege claimed cannot be sustained. Of this conclusion we are certain although we may not be quite so sure of some of the reasoning by which that conclusion is reached.

The distribution of governmental powers and functions is discussed in this wise in 12 Corpus Juris, 802:

" (§ 234) Constitutional government in the United States is distinguished by the care that has been exercised in committing the legislative, executive, and judicial functions to separate departments, and in forbidding any encroachment by one department on another in exercise of the authority so delegated. This theory of the tripartite division and separation of the powers of government was noted by Aristotle, and discussed by Locke. By Montesquieu, it was declared essential to civil liberty, and it was through his celebrated work that the theory was made familiar to, and was accepted by, the men who framed the early American state constitutions and the federal constitution of 1787. The separation of powers was believed by Montesquieu, by Blackstone, and by American constitution makers of the eighteenth century, to be one of the chief and most admi-

rable characteristics of the English constitution. In fact, no such separation of the legislative and executive functions existed under the English constitution and it was in the written constitutions of the new American states that it was first practically applied. In Virginia, where, under the colonial system, judges sat in the Legislature, the bill of rights, adopted in 1776, which marked the transition from province to commonwealth, provided 'that the legislative and executive power of the State should be separate and distinct from the judiciary.' The distributive clause thus originated was inserted in other early constitutions, and from time to time was adopted by the new states. So that, except in a few instances, all the American state constitutions contain a provision for the separation of governmental powers into legislative, executive and judicial. Many of these provide also that neither branch may exercise powers belonging to the other, while others provide that a person who is of one of the three departments shall not exercise any powers belonging to either of the others except in the instances expressly directed and permitted by the constitution. Under such provisions, each department must exercise all its powers whenever public necessity requires it, and refrain from exercising any power that does not belong to it.

"(§ 235) But while such is the theory of American constitutional government, it is no longer an accepted canon among political scientists. It has never been entirely true in practice. The courts recognize that the separation of the powers is far from complete, and that the line of demarcation between them is often indefinite. Each of the three departments normally exercises powers which are not strictly within its province. Thus the executive, by means of the veto, shares the legislative power, and in passing on claims, the judicial power. The Legislature may be authorized to exercise the appointing power, and in adjudicating claims, and in some states in granting divorces, it acts judicially. The courts, too, legislate not alone by decisions which modify the existing law, but also by making rules, which often have nearly the force of statutes, and they are not infrequently clothed with the power of appointment."

In the Harvard Law Review of February, 1921, there is an article on page 424 entitled "How Far May Legislature Regulate Judicial Procedure?" A citation from this article is apt for our purposes. After pointing out that conflicts

were rare because of the deference of the courts, the reviewer says:

"It is apparent from these cases that, in our system of dual control over procedure, judicial regulation is not coextensive with legislative regulation. Any other result would be at variance with the genius of our constitutions and the separation of powers. To say, as Justice Field implies, that the legislative regulation of judicial procedure is dependent for its effectiveness upon the acquiescence of the court would belie the historical facts. Equally vulnerable is the statement that the courts may regulate their procedure only by permission of Legislatures. The orbits of legislative and judicial regulation of procedure are distinct and they may be determined primarily by historical criteria. Clearly the courts may disregard any legislative interference with what they have habitually regulated from earliest days. In that category are such matters as admission to the bar, disbarment, and the details of procedure of which the principal case is an illustration. (Houston v. Williams, 13 Cal. 24, 73 A. D. 565.) Logically the Legislature, then, should have the right to regulate those matters of procedure which it habitually regulated. But the doctrine of the separation of powers imposes restrictions upon this legislative right. The judiciary is an independent coordinate department. Consequently, the Legislature would stray from its orbit were it to provide for anything which either abridged the general power of the courts to administer justice or which substantially hampered the court in its functions. Regulation of the court's power over contempt would be an illustration of the former class. Legislative limitation of the time given to counsel for argument may well be regarded as an illustration of the latter class."

The difficulties are enhanced by the fact that the Organic Acts of Porto Rico have always given the Legislature control over jurisdiction and procedure. Legislatures may fix the terms of courts, but the Legislature may not adjourn courts completely. For example, if the Legislature required all courts to adjourn and hold no terms for 130 days or more (the effect of the privilege claimed here), it might be questioned whether this was a reasonable exercise of the control by the Legislature over judicial procedure, especially if it was an attempt to close the courts and prevent applications

for extraordinary remedies. Even in vacation courts may grant certain extraordinary remedies.

Quite a few of the courts have determined the question of the legislative power over court procedure and the like by the test of reasonableness. The Legislature may, perhaps to a certain extent, regulate admission to the Bar, may limit the power to punish for contempt and may do other similar things, and we have respected its acts in this regard; but courts must have control over the cases actually pending before them in term time. It is a question of judicial power which by the Organic Acts, past and present, has been vested in the Supreme Court and the inferior courts.

A case with some elements of similarity arose in New York, *Riglander* v. *Star Company,* 98 App. Div. 101. The Act in question required a case to be set and heard on a a certain day, the class of cases already having a certain preference under the law. The court said:

"One of the powers which has always been recognized as inherent in courts, which are protected in their existence, their power and jurisdiction by constitutional provisions, has been the right to control its order of business and to so conduct the same that the rights of all suitors before them may be safeguarded. This power has been recognized as judicial in its nature, and as being a necessary appendage to a court organized to enforce rights and redress wrongs."

That decision partially turned on the fact that it would be unjust to compel a party always to go to trial on a certain day, but it is equally unjust to say that a man's case must be always postponed at a certain period at the election of another man.

As said in 13 Corpus Juris, 126, "Continuances of causes are not favored by the courts, and when granted, the grounds alleged must be such that the court may clearly see that a postponement of the cause will result in a furtherance of justice."

"Under our system of government the courts cannot lawfully interfere with the substance of the law-making power and discretion vested in the Legislature by the Constitution. Nor can the Legislature lawfully interfere with the substance of the judicial power and discretion vested in the courts by the Constitution. The Legislature may lawfully prescribe rules of procedure which the courts will observe; but the Legislature has no power under the Constitution to regulate the judicial discretion that is vested in the courts."

*Ruff* v. *Georgia S. & F. Ry. Co.*, 64 So. 785, where the granting or denial of a motion for new trial as distinguished from mere procedure was held to be discretional in the courts.

See also *Chicago B. & Q. Ry. Co.* v. *Gildersleeve*, 118 S. W. 86, to the effect that courts can not be shorn of their power to punish for contempt.

*Kilbourn* v. *Thompson*, 103 U. S. 168, was a case where the Supreme Court of the United States said that Congress had exceeded its power to punish for contempt, showing that there are certain fields which the Legislature has no right to invade.

*Bridgeport Public Library Etc.* v. *Burroughs Home et al.*, 82 Atl. 582, with the cases cited, is also interesting as bringing out that the Legislature can not generally determine conflicting rights even though such power was once claimed by the said Legislature. The theory of the division of the powers of government prevented.

The historical test is only a guide, inasmuch as courts have had their procedure regulated and their powers limited since the organization of practically every sovereignty in the United States, and likewise the courts have claimed exclusive powers which were once concurrently shared by Legislatures. This concurrence still prevails in many fields. *Crane* v. *Meginnes*, 19 A. D. 237, was a case where a divorce was granted by the Legislature.

We have said that the due process of law is not the basis of this opinion, yet it must play a part. McGehee, Due Pro-

cess of Law, page 68. Whether or not a particular act is an invasion of judicial power may depend upon whether obedience to it would cause the courts to act arbitrarily or unjustly or give one citizen a preference over another in the trial of the case when there was nothing in the nature of the suit itself to cause such preference.

The lawyers in the Legislature are also officers of this court. They have a divided duty. In most cases an attorney likewise a member of the Legislature could discretionally obtain a postponement if genuinely urged, and we recall no case in which a continuance has been refused.

Such a postponement as claimed can never be a matter of right, for a lawyer owes as much allegiance to the court as he does to the Legislature. So that whether a case should be continued or not can not be determined on the privilege of the legislators, for that would produce inequalities and invade a field which is purely juridical. So much of the Act No. 34 of March 11, 1915, as claims this exclusive privilege is unconstitutional and void as being against the judicial power.

In view of the foregoing conclusion we shall consider the motion to dismiss.

A judgment was rendered on November 23, 1920, and an appeal taken on December 23, 1920, and application made for a reextension of time to file a statement of the case on January 11, 1920, which was granted. The district court had no authority to extend the time at that date and the order extending the time was void. Code of Civil Procedure, section 269 as amended; *Belaval* v. *Córdova,* 21 P. R. R. 509; *Guardian Assurance Co.* v. *López Acosta,* 24 P. R. R. 597; *Ex parte Deliz et al.* v. *Franco,* 21 P. R. R. 498; *Criado* v. *Rivera,* 25 P. R. R. 234.

With respect to the motion to dismiss, therefore, it is evident that it must be granted.

*Dismissed.*

Chief Justice Hernández and Justices Del Toro, Aldrey and Hutchison concurred.